[Civ. No. 12472. Fourth Dist., Div. Two. Feb. 8, 1974.]

MARJORIE A. PETHERBRIDGE, Plaintiff and Appellant, v. ALTADENA FEDERAL SAVINGS AND LOAN ASSOCIATION et al., Defendants and Respondents.

194

**COUNSEL**

Byhower, Longley & Petherbridge and Richard W. Petherbridge for Plaintiff and Appellant.

McKenna, Fitting & Finch, Bernard Kolbor, Aaron M. Peck, O'Melveny & Myers, Bennett W. Priest, Bertrand M. Cooper, Karen Kaplowitz, Martin Glenn, Rutan & Tucker, Garvin F. Shallenberger, Alec J. Glasser, Hahn & Hahn, Lawrence N. Fisher, David K. Robinson, William W. Berryhill, James H. Jefferson, Jr., Mary Ann Spicer, Greenberg, Bernhard, Weiss & Karma, Herbert A. Bernhard, Dennis E. Golob, Fulop, Rolston, Burns & McKittrick, Marvin G. Burns, John Petrasich, Greenberg & Glusker, Michael K. Collins, Wilson, Wilson & Kotob, Robert I. Kotob, Davidson & Davidson, Harold W. Davidson, Pitts, Dalton, Tuller, Von Esch, Kane, Mordock & Covington, Carl L. Kane, Hugh Evans, Jr., Edward M. Lynch, Harry Pflaumer, Arthur E. White, Kalmbach, DeMarco, Knapp & Chillingworth and A. Dwain White for Defendants and Respondents.

**OPINION**

**KERRIGAN, Acting P. J.** — Marjorie A. Petherbridge ("Plaintiff" and "Appellant") is a borrower of Prudential Savings and Loan Association ("Prudential"). The loan is secured by a deed of trust on real property located in the County of Orange. Under the provisions of her trust deed, plaintiff is required to pay monthly, in addition to principal and interest, a sum estimated by Prudential at 1/12 of the combined annual costs of taxes and insurance on the property. These supplemental payments are called "impounds."

Plaintiff brought a class action upon behalf of herself and all impound-paying mortgage borrowers against Prudential and 37 other savings and loan associations doing business in Orange County. Her complaint contained the following allegations: the 38 lending institutions require the payment of impounds by their borrowers; the payment of impounds creates

a "trust relationship" between borrower and lender; the 38 savings and loan associations entered into a conspiracy to breach said trust relationship and to defraud the members of the class by investing the trust funds for their own uses and purposes and by not giving the borrowers credit for the interest derived therefrom; each savings and loan association should be required to account to their borrowers for the amount of impounds collected and the use of such impounds; they should also be required to pay their borrowers any income or interest earned on such impounds; and that the borrowers be awarded compensatory damages in excess of $1 billion ($1,000,000,000) for the use of the impounds, together with punitive damages in a sum in excess of $113 million ($113,000,000) for the lenders' deception in appropriating the income derived from impounds to their own use.

Two of the thirty-eight defendants—American Savings and Loan and Home Savings and Loan—successfully brought an action in the Los Angeles Superior Court for a bill of peace, since they were then defending similar class actions in Los Angeles tribunals.

In any event, Prudential and the 35 remaining savings and loan associations answered plaintiff's complaint and, in essence, denied the existence of any trust relationship with their borrowers with respect to payments of impounds or need to pay interest on impound accounts. In addition, all specifically denied the existence of any conspiracy among them.

After some discovery proceedings had been completed, plaintiff filed a motion for determination that the action be maintainable as a class action. However, her counsel apparently did not take any action for the purpose of having the matter placed on calendar for hearing. A few months later, several of the defendants filed motions for an order determining that the action could *not* be maintained as a class action. Before scheduling a full hearing on the matter, the court granted the parties more time to complete discovery and to submit declarations in support of their respective positions.

Eventually, several lengthy hearings were held on the consolidated motions for the purpose of determining the propriety of maintaining the suit as a class action.

At the hearings, plaintiff made the following showing: the defendants followed the common practice of commingling impounds with general assets; they invested such assets and failed to pay interest on impounds; defendants were allegedly in violation of a regulation of the Federal Housing Administration requiring sequestration of impounds on FHA insured loans; as to the charge of conspiracy, defendants were all members of a

trade association known as the California Savings and Loan League; the League has an attorneys committee which sends communications to members; on one occasion the committee sent out a 56-page report to its members; and one provision of the report dealt with "impounds" and with "contracts of adhesion."

In opposition to the foregoing proof, the defendants filed multiple declarations containing the following assertions: the impound practices of the various associations differ; they are arrived at independently; the associations have never formulated or effected any policy regarding their impound accounts on the basis of any agreement or understanding with each other; membership in the California Savings and Loan League is equivalent to an attorney being a member of the State Bar; the issue as to whether any trust relationship exists between the thousands of borrowers and their respective lenders would necessitate an examination of each deed of trust executed by them; and most of the provisions of deeds of trust used by the respective associations vary in form and content.

Following the hearing on the consolidated motions, the court made the following findings of fact: (1) plaintiff failed to show a *substantial possibility* that she could prove the existence of a civil conspiracy among Prudential and the remaining defendants; (2) plaintiff is a mortgage loan borrower from Prudential and enjoys no contractual relationship with any of the remaining defendants; (3) the questions of law and fact in the instant action which differ among defendants and among their respective mortgage loan borrowers predominate over those questions of law and fact which are common to them; and (4) it would consume undue judicial time to permit the action to proceed as a class action against all the defendants.

The court came to the following conclusions: (1) plaintiff had failed to establish by competent evidence that there is a *substantial possibility* that she could prove the existence of the alleged civil conspiracy among Prudential and the remaining defendants; (2) plaintiff is *not* a member of any class of mortgage loan borrowers, except Prudential's borrowers; and (3) plaintiff could *not* fairly represent the claims of any of the respective loan borrowers of the remaining 35 defendants.

A judgment dismissing the action as to the 35 associations ("Respondents") was duly entered and this appeal followed.

Although stated in varying ways, appellant raises two issues: (1) the trial court improperly considered whether the class action (as framed by the pleadings, affidavits and declarations) had some likelihood of success; and (2) even assuming the trial court acted with propriety in requiring plaintiff

to establish a possibility of success on the merits, she did, in fact, demonstrate the requisite likelihood of success.

Preliminarily, a brief discussion of the procedural mechanism employed by the trial court to determine whether this suit was maintainable as a class action might be appropriate inasmuch as this kind of lawsuit is a relatively new phenomenon.[1]

Until recent times, the issue as to whether a class action could be maintained was litigated by way of demurrer. However, in 1971 the Supreme Court (*Vasquez* v. *Superior Court*, 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]) observed that the bare allegations of the complaint should be sufficient to sustain the action as a purported class action through the pleading stages, but that it would be proper for the trial court to hold an evidentiary hearing (after the matter was at issue and before trial) to determine whether or not the procedural prerequisites of a class action were, in fact, present. The Supreme Court suggested that trial judges utilize the criteria and procedures provided in section 1781 of the Civil Code (entitled the Consumers Legal Remedies Act) and rule 23 of the Federal Rules of Civil Procedure in making the class determination. (*Ibid.*, pp. 820-821.)

Section 1781, subdivision (b), of the Civil Code states the following are the essential conditions of a class action:

(1) It is impracticable to bring all members of the class before the court.

(2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members.

(3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class.

(4) The representative plaintiffs will fairly and adequately protect the interests of the class.

Inasmuch as the *Vasquez* court recognized that section 1781 might not provide adequate guidance to trial courts in devising "pragmatic procedural devices" for determining the propriety of a class action, it also recommended the use of rule 23 of the Federal Rules of Civil Procedure for assistance. (*Ibid.*, p. 821.)

---

[1]Section 382 of the Code of Civil Procedure is the general statute authorizing class actions. It provides in part: ". . . when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." However, the statute contains no procedural guidelines for determining whether any case may properly proceed as a class suit.

Rule 23(a) provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Rule 23(c)(1) provides for a hearing on a motion to certify class. Similarly, section 1781, subdivision (c) also provides for a hearing. Consequently, a hearing was held in this case on the consolidated motions of the respective parties.

The crux of appellant's attack on the judgment of dismissal is that the court committed grievous error in requiring her to produce proof that she had a substantial possibility of establishing a conspiracy among the defendants as a prerequisite to the certification of class. She contends that the judgment of dismissal was based on the court's finding that she had not produced sufficient evidence as to the likelihood of success on the merits with reference to the conspiracy count but that the law does not require a mini-trial for the purpose of establishing ultimate success.[2] While appellant frankly admits that there is federal authority that a case should not be allowed to proceed as a class action unless the plaintiffs are able to convince the court that there is a substantial possibility that they will prevail on the merits (see *Dolgow* v. *Anderson* (E.D.N.Y. 1968) 43 F.R.D. 472), she claims that *Dolgow* is not good law and that other federal decisions have impugned its integrity by holding that at a pretrial hearing under rule 23, plaintiffs are *not* required to establish the validity of their claims on the merits. (See *Miller* v. *Mackey International, Inc.* (5th Cir. 1971) 452 F.2d 424; *Mersay* v. *First Republic Corporation of America* (S.D.N.Y. 1968) 43 F.R.D. 465.)

However, we are not inclined to resolve the conflict, if any, in the federal decisions. In the first place, California's highest tribunal has directed California trial courts "to adopt innovative procedures which will be fair to the litigants and expedient in serving the judicial process." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 821.) ▉ Secondly, the ultimate decision as to the showing required at the pretrial level in order to maintain the class action should be within the discretion of the trial court, providing it applies the correct criteria in making its determination. (See *Inter-*

---

[2]However, the court made several findings, any one of which, if valid, would be capable of sustaining the judgment. (*Infra.*)

*pace Corporation* v. *City of Philadelphia* (3d Cir. 1971) 438 F.2d 401, 403; *Gold Strike Stamp Company* v. *Christensen* (10th Cir. 1970) 436 F.2d 791, 792-793.)

The issue then arises whether the trial court applied the proper principles in making its determination. Appellant's action was predicated on two theories: (1) violation of a fiduciary duty; and (2) conspiracy. ■ The only "factual nexus" between appellant and these respondents was based on the conspiracy theory (former Code Civ. Proc., § 427) inasmuch as appellant conceded she was a borrower of Prudential (and only Prudential) and had no contractual or other relationship with any of the respondents. ■ By reason of this concession, it necessarily followed that no trust or fiduciary relationship existed between her and the 35 respondents. The court therefore put appellant to the burden shared by any class plaintiff to show that she was entitled to class action treatment and relief against these respondents. (See *Cash* v. *Swifton Land Corporation* (6th Cir. 1970) 434 F.2d 569, 571; *Green* v. *Wolf Corporation* (2d Cir. 1968) 406 F.2d 291, 298.) And the only way this could be accomplished was to come forward with some proof a conspiracy existed so as to bring her within the class she purported to represent.

■ A plaintiff seeking to maintain a class action must be a member of the class he claims to represent. (*La Sala* v. *American Sav. & Loan Assn.*, 5 Cal.3d 864, 875 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Cal. Gas. Retailers* v. *Regal Petroleum Corp.*, 50 Cal.2d 844, 850 [330 P.2d 778]; *Greater Westchester Homeowners Assn., Inc.* v. *City of Los Angeles*, 13 Cal. App.3d 523, 526 [91 Cal.Rptr. 720]; *Los Angeles Fire & Police Protective League* v. *Rodgers*, 7 Cal.App.3d 419, 423-425 [86 Cal.Rptr. 623].) The class device is a mere procedural mechanism and, as such, it may not be used to achieve *standing*—the right to relief. (*Oakland Municipal Improvement League* v. *City of Oakland*, 23 Cal.App.3d 165, 170 [100 Cal.Rptr. 29].) Therefore, a class representative seeking to assert several individuals' legal rights must first himself be a member of the class which possesses those rights. (*La Sala* v. *American Sav. & Loan Assn., supra*, 5 Cal.3d 864.)

In *Payne* v. *United California Bank*, 23 Cal.App.3d 850 [100 Cal.Rptr. 672], plaintiffs brought a class action on grounds of fraud and misrepresentation against both the seller of vacuum cleaners (Filter Queen) and the occasional financier (United California Bank) of the seller's installment contracts; plaintiffs sought to represent all vacuum cleaner purchasers of Filter Queen; while the named plaintiffs had purchased their vacuum cleaners on an installment plan, UCB had *not* financed their particular purchases; the reviewing court found that the class representatives' lack of a personal

claim against the bank required dismissal of that particular defendant from the action in that plaintiffs did not belong to the class whom they purportedly represented; plaintiffs could not give themselves standing to sue by purporting to represent a class of which they were not even members.

In *Kauffman* v. *Dreyfus Fund, Inc.* (3d Cir. 1970) 434 F.2d 727, plaintiff, a shareholder of four (4) mutual funds, brought a class action against the four (4) mutual funds in which he owned an interest and sixty-one (61) other mutual funds in which he did *not* own shares; plaintiff sought to maintain his class suit upon behalf of mutual fund shareholders in general, but the court held that he did not have standing to assert a personal action under rule 23 of the Federal Rules of Civil Procedure on behalf of all similarly situated shareholders of the 61 funds; in doing so, the court rationalized that it is ordinarily necessary that plaintiff be able. to show injury to himself in order to entitle him to seek judicial relief against a particular defendant; a plaintiff who is unable to secure standing for himself is not in a position to fairly insure the adequate representation of those alleged to be similarly situated; in short, a predicate to a plaintiff's right to represent a class is his eligibility to sue in his own right; what he may not achieve himself, he may not accomplish as a representative of a class.

Turning to the conspiracy theory, it has been held that a plaintiff who allegedly borrowed money from one bank may not (under rule 23) maintain an action against 19 other national and state banks which had not entered into any credit transactions with plaintiff; plaintiff's right to recover damages for alleged violations of the Truth in Lending Law by the 20 banks depends upon the existence of a contractual relationship between him and such banks; and is not aided by an allegation of conspiracy between his bank and the other 19 banks. (*Weiner* v. *Bank of King of Prussia,* 358 F.Supp. 684.)

Consequently, the trial court herein properly required some proof of the conspiracy charge for the purpose of ascertaining whether plaintiff had standing. It also required proof of the conspiracy for another reason.

To maintain a class action, it must appear that the common issues ("commonality" of issues) sufficiently predominate over the several issues to warrant a single suit as opposed to a multiplicity of suits. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at pp. 810-815.)

Suffice it to say that voluminous evidence was presented by respondents at the time of the hearing on the motion for certification (in the form of affidavits, declarations and supporting documents) as to the respective impound policies and practices of the various institutions (as well as the different trust deed forms used by them). In substance, this documentary

evidence established sundry differences in the impound practices and policies of the multiple associations.

Appellant's proof of the conspiracy was essentially based on two factors: (1) respondents' membership in the Savings and Loan League; and (2) the fact that the members had received a model deed of trust form, together with a 56-page report explaining the trust deed, with only one-half (½) page thereof devoted to the subject of impounds. Such evidence was minuscule at best. If such a scintilla of evidence was sufficient to justify the maintenance of a class action, the fundamental requirement of standing would be rendered meaningless. By merely alleging a conspiracy,[3] without any significant proof, any plaintiff could maintain any type of action against any combination of defendants with whom he enjoyed no legal relationship.

Absent a showing of a conspiracy, the court could only conclude: (1) appellant was not a member of the class which she purportedly represented, that is, if each of the respondents was guilty of wrongdoing, it was not as to appellant and she therefore could not fairly and adequately represent the interests of the class, and (2) because of the differing policies, practices and loan instruments utilized by the various institutions, the multiple issues would predominate over the common issues and such dissimilarities clearly outweighed the advantages to the judicial process and the litigants of trying in one action the issue with respect to the lenders' action of not paying interest to borrowers on impound accounts.

The trial court did not conduct a mini-trial as charged by appellant. It only required her to show in documentary form (as any moving party is required to do) that her motion had some merit. Nor did the court deprive appellant of her action. It merely narrowed the class down, still leaving appellant with a group of sufficient size to accomplish the basic purposes of class litigation. Appellant is representing all of Prudential's borrowers who pay impounds. She is a member of that class. The impound practices

---

[3]At the time of the certification hearing herein, the issues had been joined by way of the complaint and answers thereto. Therefore, the trial court understandably did not inquire into the issue as to whether the charge of conspiracy was actionable but merely required some proof of its existence. Nevertheless, it should be observed that civil conspiracy is not a tort in the State of California (*Selby Realty Co.* v. *City of San Buenaventura*, 10 Cal.3d 110, 127 [109 Cal.Rptr. 799, 514 P.2d 111]; *Bowman* v. *Wohlke*, 166 Cal. 121, 125 [135 P. 37]). Rather, it is a mere theory of joint liability (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 773 at p. 2389) whereby all who cooperate in another's wrong may be held liable. (*Loeb* v. *Kimmerle*, 215 Cal. 143, 150 [9 P.2d 199].) Appellant cites section 427, subdivision 9, of the Code of Civil Procedure (now repealed) as authorizing the joinder of "all causes of action arising out of a conspiracy . . . ." But the trial court must first be satisfied as to the fact of conspiracy before it can decide which causes of action arise therefrom.

and trust deed provisions employed by Prudential are presumably common to the members of that class. To include the 35 respondents in the same lawsuit would have rendered the maintenance of such action extremely unwieldy, if not impossible to control, due to the varying practices, procedures and contractual provisions employed by the associations and the relationship of the several associations to their many borrowing groups.

The judgment of dismissal is affirmed.

Tamura, J., and Gabbert, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 4, 1974.