[Civ. No. 42427. Second Dist., Div. Three. Apr. 30, 1974.]

KENNETH PHILLIPS, Plaintiff and Appellant, v.
CROCKER-CITIZENS NATIONAL BANK et al.,
Defendants and Respondents.

## COUNSEL

Bodle, Fogel, Julber, Reinhardt & Rothschild, Daniel Fogel, Stephen R. Reinhardt, Loren R. Rothschild, Joel N. Klevens, Simon, Sheridan, Murphy, Thornton & Hinerfeld, Richard C. Leonard, Thomas R. Sheridan-and Robert E. Hinerfeld for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, William A. Masterson, Terence M. Murphy, Sandler & Rosen, Gerald G. Wolfson, Loeb & Loeb, Howard I. Friedman and Andrew S. Clare for Defendants and Respondents.

## OPINION

**THE COURT.**—Three named plaintiffs, on behalf of themselves and all others similarly situated, sued numerous named lending institutions in a class action, the complaint alleging breach of trust, fraudulent misrepresentation, negligent misrepresentation and breach of contract. After general and special demurrers of four of the named defendants were sustained, plaintiffs were given leave to amend. Thereafter, the names of two of the original named plaintiffs were omitted and plaintiff Kenneth Phillips filed

a first amended complaint "on behalf of himself and all other persons, corporations, partnerships, associations, and other entities who hold or have held mortgages insured by the FHA with any of the named defendant mortgagees, or any member of the class of mortgagees they represent, during the applicable limitations period." Plaintiff Phillips alleges that he "has held an FHA mortgage with defendant Bank of America." It is further alleged that the named defendants "are approved mortgagees doing business within the State of California who have met the requirements of the FHA as specified in 24 C.F.R. §§ 203.1, 203.2, 203.3, 203.4, 203.6, 207.22, 221.528, 232.1(c), and 236.1, and who have acted as approved mortgagees and, who, pursuant to the provisions of the National Housing Act, have entered into mortgages with plaintiffs, which mortgagees were insured by the FHA" for "one-, two-, three-, and four-family residences, and for multi-family residences, as well as for nursing homes and other project developments."[1]

In alleging the grounds for bringing the action as a class action, plaintiff Phillips sets forth the following "common questions of fact" which "unite all plaintiffs and all defendants":

"20.1) All plaintiffs executed agreements with defendants, which agreements included mortgages, notes, mortgage applications, and other documents which contained substantially identical language concerning the payment of mortgage insurance premiums by the plaintiffs to the defendants.

"20.2) Each plaintiff agreed to pay to one of the defendants, in addition to the mortgage payments of principal and interest, an amount of money sufficient to pay the annual mortgage insurance premiums which the defendants owed to the FHA.

"20.3) Each defendant billed to, and collected from plaintiffs an amount of money which was greater than the amount needed by the defendants to pay the annual mortgage insurance premiums owed by the defendants to the FHA.

"20.4) Each member of the plaintiffs' class has sustained a legally unjustified loss by virtue of the facts herein set forth.

"20.5) Each member of the defendants' class has sustained an unlawful profit by reason of the facts set forth herein.

---

[1]Plaintiff Phillips describes defendants named as Does 1-5,000 as "FHA approved mortgagees, doing business in the State of California, who meet the requirements enumerated in 24 C.F.R. §§ 203.1, 203.2, 203.3, 203.4, 203.6, 207.22, 221.528, 232.1(c), and 236.1, who have issued federally insured mortgagees [sic] pursuant to the National Housing Act, and who have engaged in the illegal practices described herein."

"20.6) Proof of a common or a single set of facts will establish the right of each member of the class to relief against the defendants.

"20.7) The method of calculating the amount of damages suffered by each of the plaintiffs and caused by the defendants' wrongful retention of funds entrusted to them is identical for each member of the plaintiffs' class, as well as for each member of the defendants' class.

"20.8) The factual similarities listed in subparagraphs 20.1 through 20.7 are present regardless of the specific type of property involved in the mortgage transaction, whether it be single-family residential, multi-family housing (five or more family units), nursing homes, or other types of project developments, for which FHA insurance is available."

In the first cause of action plaintiff Phillips alleges breach of a fiduciary relationship on defendants' part and retention of secret profits. Thus plaintiff alleges that "[t]he mortgage entered into between each of the plaintiffs and each of the defendants, provides that in addition to the principal and interest owing on the note secured by the mortgage, the plaintiff mortgagor must pay to the defendant mortgagee a certain sum of money equal to the annual yearly mortgage insurance premium owed by the mortgagee to the FHA."

Plaintiff Phillips further alleges: "Plaintiffs were billed by defendants for an amount equal to the annual mortgage insurance premium, and plaintiffs deposited with defendants, in trust, a sufficient sum to pay said mortgage insurance premiums.

"Defendants paid a portion of said mortgage insurance premiums to the FHA by means of FHA debentures, which were purchased by defendants on the open market at a discount from their par values and were returned to the FHA in payment of the annual mortgage insurance premiums at an amount equal to their par value plus accrued interest.

"Because defendants were able to pay the annual mortgage insurance premiums by means of FHA debentures, a substantial portion of the funds entrusted to defendants by plaintiffs, which were to be used to pay the mortgage insurance premiums, have been retained by the defendants, and no credit for such sums of money has been given by defendants to the plaintiffs.

"Defendant mortgagees have never disclosed to plaintiff mortgagors that they were regularly paying the FHA mortgage insurance premiums with less than the sum of money entrusted by plaintiff mortgagors to defendant mortgagees exclusively for that express purpose."

It is alleged that as a result of defendants' breach of their fiduciary duties to plaintiffs, plaintiffs have suffered damage "in an amount equal to the difference between the monies paid by plaintiffs to the defendants to be turned over to the FHA for mortgage insurance premiums, and the amount actually turned over to the FHA by defendants, after defendants have been reimbursed by the FHA for the debentures they have turned in." And it is allgeed that plaintiffs are entitled to punitive damages.

It is further alleged that plaintiff Phillips had no knowledge of the alleged illegal and fraudulent actions of defendant mortgagees, nor did he "have knowledge of any of the facts which might have lead to the discovery of defendants' fraudulent and illegal actions until shortly prior to the filing of the original complaint in this action." It is alleged that defendants employed "deceptive practices" and "techniques of secrecy" to "avoid detection and to fraudulently conceal" their "illegal and fraudulent actions."

In the second cause of action plaintiff Phillips, relying on the same facts, alleges that defendants are guilty of fraudulent misrepresentation in that pursuant to the terms of the mortgages entered into between plaintiffs and defendants, defendants collected moneys from plaintiffs representing that the amount collected equalled the mortgage insurance premiums "owed and customarily paid by defendant mortgagees to the FHA," whereas defendants at all times knew that the amounts collected from plaintiffs were in excess of the amounts necessary to pay the FHA for mortgage insurance premiums. Plaintiff Phillips alleges in the third cause of action, based on the same facts, that defendants are guilty of negligent misrepresentation. The fourth and final cause of action is for breach of contract, plaintiff alleging therein: "Pursuant to the mortgages described above, plaintiffs were obligated to pay to the defendants an amount of money sufficient to pay the mortgage insurance premiums owed by the defendants to the FHA. [¶] . . . Defendants charged to, and collected from plaintiffs, sums of money in excess of the amount provided for in the mortgages, in direct contravention of plaintiffs' and defendants' agreements."

Defendants Weyerhauser Mortgage Company, Advance Mortgage Corporation, Crocker National Bank and Bank of America National Trust and Savings Association each filed demurrers to plaintiff's first amended complaint. The trial court overruled the demurrers of defendant Bank of America and sustained the demurrers of defendants Weyerhauser, Advance and Crocker "without leave to amend on the grounds that no cause of action is stated against these named Defendants." An order of dismissal was thereafter entered as to defendants Weyerhauser, Advance and Crocker. Plaintiff Phillips appeals from the order of dismissal and states

the question presented on this appeal as follows: "[W]hether the named plaintiff [Kenneth Phillips], a borrower from the Bank of America in connection with an FHA approved mortgage, can represent a class of all borrowers from FHA approved lenders who operated in the same manner as the Bank of America, even though his dealings were limited to the one defendant lender."

In *Payne* v. *United California Bank,* 23 Cal.App.3d 850 [100 Cal.Rptr. 672], the plaintiffs brought an action, as individuals and as representatives of a class, against a manufacturer, Filter Queen, for having fraudulently induced plaintiffs to enter into installment contracts for the purchase and sale of vacuum cleaners, and against United California Bank. It was alleged that the bank participated in a dealer agreement with Filter Queen whereby the bank agreed to finance the contracts of sale under the Master Charge credit system. However, although it was alleged that the named plaintiffs purchased vacuum cleaners from Filter Queen on installment contracts, all of their contracts were signed at least four and one-half months prior to the time Filter Queen entered into the Master Charge agreement with the bank. The trial court sustained without leave to amend the general demurrer of the bank. In affirming the trial court's order of dismissal, the appellate court stated (23 Cal.App.3d at p. 859): "Plaintiffs here further urge that the fatal omission does not affect the class action alleged by their second cause of action, pursuant to Code of Civil Procedure section 382. However, the existence of a community of interest between members of the class with regard to the questions of law and fact involved is essential [citation]. [Fn. omitted.] . . . [¶] . . . [T]he amended complaint does not set forth sufficient facts to bring plaintiffs under the 'reasonable possibility' rule regarding representative actions. There is nothing to indicate that plaintiffs are members of the interested class, namely, persons who were defrauded by Filter Queen by means of financing supplied through Master Charge system by the bank. Thus, plaintiffs do not belong to the class whom they purportedly represent. [Fn. omitted.] Plaintiffs cannot give themselves standing to use [sue] by purporting to represent a class of which they are not a member [citation]."

In *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.,* 37 Cal.App.3d 193 [112 Cal.Rptr. 144], the plaintiff brought a class action on behalf of herself and all impound-paying mortgage borrowers against Prudential Savings and Loan Association and 37 other savings and loan associations, alleging civil conspiracy and violation of fiduciary duties, for alleged misuse of impound funds paid in by borrowers from defendant institutions pursuant to loan agreement terms. The plaintiff was a borrower of Prudential. Two of the 38 defendants successfully brought an action for a bill of peace

since they were then defending similar class actions. Several other defendants filed motions for an order determining that the action could not be maintained as a class action. The trial court concluded that the plaintiff failed to establish that there was a "substantial possibility" that she could prove a civil conspiracy among Prudential and the remaining defendants, that "plaintiff is *not* a member of any class of mortgage loan borrowers except Prudential's borrowers," and that the plaintiff "could *not* fairly represent the claims of any of the respective loan borrowers of the remaining 35 defendants." A judgment of dismissal as to the 35 loan associations was entered, from which the plaintiff appealed.

In affirming the judgment of dismissal in *Petherbridge*, the appellate court stated (37 Cal.App.3d at pp. 200-202): "Appellant's action was predicated on two theories: (1) violation of a fiduciary duty; and (2) conspiracy. The only 'factual nexus' between appellant and these respondents was based on the conspiracy theory (former Code Civ. Proc., § 427) inasmuch as appellant conceded she was a borrower of Prudential (and only Prudential) and had no contractual or other relationship with any of the respondents. By reason of this concession, it necessarily followed that no trust or fiduciary relationship existed between her and the 35 respondents. The court therefore put appellant to the burden shared by any class plaintiff to show that she was entitled to class action treatment and relief against these respondents. (See *Cash* v. *Swifton Land Corporation* (6th Cir. 1970) 434 F.2d 569, 571; *Green* v. *Wolf Corporation* (2d Cir. 1968) 406 F.2d 291, 298.) And the only way this could be accomplished was to come forward with some proof a conspiracy existed so as to bring her within the class she purported to represent. [¶] A plaintiff seeking to maintain a class action must be a member of the class he claims to represent. (*La Sala* v. *American Sav. & Loan Assn.,* 5 Cal.3d 864, 875 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Cal. Gas. Retailers* v. *Regal Petroleum Corp.,* 50 Cal.2d 844, 850 [330 P.2d 778]; *Greater Westchester Homeowners Assn., Inc.* v. *City of Los Angeles,* 13 Cal.App.3d 523, 526 [91 Cal.Rptr. 720]; *Los Angeles Fire & Police Protective League* v. *Rodgers,* 7 Cal.App.3d 419, 423-425 [86 Cal.Rptr. 623].) The class device is a mere procedural mechanism and, as such, it may not be used to achieve *standing*—the right to relief. (*Oakland Municipal Improvement League* v. *City of Oakland,* 23 Cal.App.3d 165, 170 [100 Cal.Rptr. 29].) Therefore, a class representative seeking to assert several individuals' legal rights must first himself be a member of the class which possesses those rights. (*La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864.) [¶] . . . [¶] In *Kauffman* v. *Dreyfus Fund, Inc.* (3d Cir. 1970) 434 F.2d 727, plaintiff, a shareholder of four (4) mutual funds, brought a class action against the four (4) mutual funds in

which he owned an interest and sixty-one (61) other mutual funds in which he did *not* own shares; plaintiff sought to maintain his class suit upon behalf of mutual fund shareholders in general, but the court held that he did not have standing to assert a personal action under rule 23 of the Federal Rules of Civil Procedure on behalf of all similarly-situated shareholders of the 61 funds; in doing so, the court rationalized that it is ordinarily necessary that plaintiff be able to show injury to himself in order to entitle him to seek judicial relief against a particular defendant; a plaintiff who is unable to secure standing for himself is not in a position to fairly insure the adequate representation of those alleged to be similarly situated; in short, a predicate to a plaintiff's right to represent a class is his eligibility to sue in his own right; what he may not achieve himself, he may not accomplish as a representative of a class. [¶] . . . [¶] Absent a showing of a conspiracy, the court could only conclude: (1) appellant was not a member of the class which she purportedly represented, that is, if each of the respondents was guilty of wrongdoing, it was not as to appellant and she therefore could not fairly and adequately represent the interests of the class, and (2) because of the differing policies, practices and loan instruments utilized by the various institutions, the mutiple issues would predominate over the common issues and such dissimilarities clearly outweighed the advantages to the judicial process and the litigants of trying in one action the issue with respect to the lenders' action of not paying interest to borrowers on impound accounts."

■ Plaintiff Phillips by his first amended complaint alleges no concert of action or conspiracy among the defendants, nor does he suggest on this appeal that that theory of liability would be applicable to the facts pleaded by him. Plaintiff Phillips has pleaded no dealings with or injury suffered at the hands of respondents herein. Having stated no personal cause of action against respondents, he cannot represent a class of plaintiffs alleged to have been injured by respondents. Lacking is the well-defined community of interest essential to maintenance of a class action. (*La Sala* v. *American Sav. & Loan Assn.,* 5 Cal.3d 864, 875 [97 Cal.Rptr. 849, 489 P.2d 1113].)

In plaintiff's opening brief reliance is placed on *LaMar* v. *H & B Novelty & Loan Company* (D.Ore. 1972) 55 F.R.D. 22, wherein the plaintiff initiated an action against all the pawn brokers licensed to conduct business under the laws of Oregon on behalf of all customers (estimated to be 33,000 persons) of such pawn brokers for alleged violations by the defendant pawn brokers of the Truth-in-Lending Act. 15 U.S.C. §§ 1601-1677. In fact LaMar did business with only one of the defendant pawn brokers, the H & B Novelty & Loan Company. The district court deter-

mined that LaMar's action was a proper class action on behalf of all those who borrowed from the H & B Novelty & Loan Company, as well as on behalf of those who borrowed from all other defendants. However, the Court of Appeals reversed the district court's decision in *LaMar v. H & B Novelty & Loan Company* (9th Cir. 1973) 489 F.2d 461. In the Court of Appeals *LaMar* was considered with *Kinsling* v. *Allegheny Airlines*. The appellate court stated (489 F.2d at p. 462): "The common issue of these cases is whether a plaintiff having a cause of action against a single defendant can institute a class action against the single defendant *and* an unrelated group of defendants who have engaged in conduct closely similar to that of the single defendant on behalf of all those injured by all the defendants sought to be included in the defendant class. We hold that he cannot. Under proper circumstances, the plaintiff may represent all those suffering an injury similar to his own inflicted by the defendant responsible for the plaintiff's injury, but in our view he cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury." In deciding *LaMar* the Court of Appeals indicated its belief that it was unnecessary to pass on the issue of the plaintiff's standing "because in our view, under a proper application of Rule 23 of the Federal Rules of Civil Procedure, the plaintiffs here are not entitled to bring a class action against defendants with whom they had no dealing." (489 F.2d at p. 464.)

Plaintiff disputes that the central issue to be determined herein is a standing issue, asserting, rather, that the issue is "the proper representational status of a class action plaintiff." The distinction is important, says plaintiff, because although the question of proper standing can be explored by a general demurrer, class representation questions "should be explored at a class action hearing after the at-issue memorandum has been filed." In support of this contention plaintiff cites the Los Angeles Superior Court Manual for the Conduct of Pre-Trial Hearings on Class Action Issues, section 427, wherein are listed the matters to be discussed at such a pretrial class action hearing, including membership of the class representative in the class and ability of the class representative to fairly and adequately protect the interests of the class. We note the following statement in *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn., supra,* 37 Cal.App.3d 193, at page 198, which appears to support plaintiff's position: "Until recent times, the issue as to whether a class action could be maintained was litigated by way of demurrer. However, in 1971 the Supreme Court (*Vasquez* v. *Superior Court,* 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]) observed that the bare allegations of the complaint should be sufficient to sustain the action as a purported class action through the pleading stages, but that it would be proper for the trial court to hold an

evidentiary hearing (after the matter was at issue and before trial) to determine whether or not the procedural prerequisites of a class action were, in fact, present."

However, it must be remembered that in *Petherbridge* the representative plaintiff alleged a conspiracy among the defendants. As the court noted, the only "factual nexus" between the representative plaintiff and the defendants with whom the plaintiff had had no dealings was based on the conspiracy theory. With the addition of the conspiracy allegations the complaint in *Petherbridge* was not subject to a general demurrer. It was only after finding, at the class action hearing, that the plaintiff had failed to establish a substantial possibility that she could prove the alleged civil conspiracy among Prudential and the remaining defendants that the court could squarely face the issue similar to the one presented here—that is, whether the plaintiff having dealt only with Prudential could represent all impound-paying mortgage borrowers as against 35 other savings and loan associations, with none of which plaintiff had had any dealings. Nothing in *Petherbridge* or in *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, leads us to the conclusion that where plaintiff has failed to allege facts showing that he is a member of the class which he purports to represent, that defect is not subject to attack by way of demurrer. **(2)** As was said in *Payne* v. *United California Bank, supra,* 23 Cal.App.3d 850, at page 859: "The question of standing to sue is one of the right to relief and goes to the existence of a cause of action against the defendant (cf. *Los Angeles Fire & Police Protective League* v. *Rodgers,* 7 Cal.App.3d 419, 423 [86 Cal.Rptr. 623]). Where the complaint states a cause of action in someone, but not in the plaintiff, a general demurrer for failure to state a cause of action will be sustained (*Parker* v. *Bowron,* 40 Cal.2d 344, 351 [254 P.2d 6])."

The judgment (order of dismissal) as to respondents is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied June 26, 1974. Mosk, J., who was of the opinion that the petition should be granted.