[Civ. No. 23825. Third Dist. June 14, 1985.]

BALTIMORE FOOTBALL CLUB, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
RAMCO, INC., et al., Real Parties in Interest.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, part I of this opinion is not certified for publication.

**COUNSEL**

Ferrari, Alvarez, Olsen & Ottoboni, John M. Ottoboni, Cooley, Godward, Castro, Huddleson & Tatum, Paul A. Renne, Craig H. Casebeer and Bruce E. Falconer for Petitioners.

No appearance for Respondent.

Friedman, Collard & Poswall, Friedman, Collard, Poswall & Virga, Morton Friedman and Allan J. Owen for Real Parties in Interest.

## OPINION

**SPARKS, J.**—In this case we consider the propriety of certifying a nation-wide class action of National Football League ticket holders for claimed damages arising out of a players' strike. Petitioners, the owners of the 28 teams in the National Football League, seek a peremptory writ of mandate directing the respondent superior court to vacate its decision certifying a class action against all of the petitioners on behalf of all season ticket holders of each team. The underlying action seeks damages based upon claims of unjust enrichment from the use of season ticket purchase money during a year in which games were cancelled due to the strike. We conclude that the requisite community of interest is lacking as to the multiple defendants and for that reason shall issue the writ.

### FACTS

This dispute arose as the result of the 1982-1983 players' strike against the National Football League clubs. On December 9, 1982, real party in interest Ramco, Inc., filed a complaint naming as defendants each of the 28 National Football League teams. It was alleged that Ramco, Inc., had purchased a season ticket for the 1982-1983 football season from the San Francisco Forty-Niners, and that the season ticket entitled Ramco, Inc., to attend each of the eight home games to be played by the Forty-Niners. As a result of the players' strike a number of home games were cancelled. It is alleged that after the cancellation of the games the defendants did not offer their season ticket holders the return of money they paid for the season tickets with interest, but rather offered only the return of the money or the opportunity to apply said funds to season tickets for the following year. Ramco, Inc., sought certification as a class action on behalf of all season ticket holders in each of the 28 National Football League cities to compel the return of the funds representing compensation for the cancelled home games and for interest at the prime rate from the commencement of the football strike until the return of the funds.

The four California football clubs, the San Francisco Forty-Niners, the Los Angeles Rams Football Company, the Los Angeles Raiders, and the Chargers Football Company, filed a demurrer to the complaint. The 24 non-California football clubs moved to quash the service of summons on the basis of a lack of personal jurisdiction. The trial court denied the motion to

quash the service of summons. It sustained the demurrer with leave to amend on the ground that the complaint failed to state whether the cause of action was upon a written or oral contract.

After various proceedings the plaintiffs eventually filed a third amended complaint. A number of additional party plaintiffs were joined in that pleading. The members of plaintiffs' class were now alleged to be fans of professional football who "purchased a season ticket from one or more of the defendants herein entitling said class member to attend all home football games for that defendant for the 1982-1983 National Football season." It was again alleged that the defendants were unjustly enriched by the use of the season ticket money for their own profit. It was further alleged that the season ticket holders of the defendants were not offered the return of their money with interest or the unjust profits received by the defendants through the use of said money. The plaintiffs sought certification as a class action and the return of all sums representing the profits earned by defendants' retention of the money referred to, which plaintiffs assert to be at least the prime interest rate from the date of purchase of the season ticket until the return of the funds.

The defendants unsuccessfully demurred to the third amended complaint. Thereafter they filed an answer. Plaintiffs moved for certification of the action as a class action. (See *Green* v. *Obledo* (1981) 29 Cal.3d 126, 145-146 [172 Cal.Rptr. 206, 624 P.2d 256].)[1] Defendants opposed the motion for certification as a class action, and in opposition submitted an affidavit of William J. Ray. Ray has been the treasurer of the National Football League since December 1967. He declared that each member club establishes its own policies concerning season tickets, based upon the particular circumstances in the team's home city. Each team sells different numbers of season tickets and each team determines the prices of the tickets, the dates of sale, and all other matters concerning season tickets. Each team's season tickets differ in various ways, including disclaimers printed on the tickets for such matters as rescheduling and revocation.

After the strike ended each club responded similarly but independently. As a result of the strike each club was required to cancel either three or four home games. Each club mailed notices to the affected season ticket holders and refunded the sales price of the season tickets to those who requested refunds. The refunds were paid from the club's own funds. The

---

[1]The certification motion sought only to establish a class action for the plaintiff class. All the defendants were sued individually and not as representatives of any defendant class. This case then does not deal with certification of defendant classes. For an informative discussion of that question, see Note, *Certification of Defendant Classes Under Rule 23(b)(2)* (1984) 84 Colum.L.Rev. 1371.

National Football League teams do not pool and divide season ticket purchase money. After the deduction of taxes and special charges the home team retains 15 percent of the ticket purchase money for stadium rental for a particular game, and the remaining ticket purchase money for that game is divided 60 percent for the home team, and 40 percent for the visiting team. The home team determines its own ticket prices.

The trial court granted the motion to certify the case as a class action. The class is defined as all persons who purchased a season ticket from one or more of the defendants for all home games during the 1982-1983 National Football League season and who paid a valuable consideration therefor. The 28 defendant football clubs now seek a peremptory writ of mandate directing the respondent superior court to vacate its order granting the plaintiffs' motion and to enter a new order denying the motion for class certification.

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . . . . .

II

■ California's class action statute provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (Code Civ. Proc., § 382.) "Although the statute appears to speak in the alternative, it uniformly has been held that two requirements must be met in order to sustain any class action: (1) there must be an ascertainable class; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732], citations omitted.) ■ As the high court explained in *Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23], the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." Thus an indispensable requirement of a class action is that there be a community of interest between the class members with regard to common questions of law and fact. But how does that com-

---

*See footnote, *ante,* page 352.

munity of interest requirement apply when there are multiple defendants? ■ It has been noted that the "[r]esolution of the class action issue assumes an added dimension when multiple parties are named as defendants. This often occurs when several persons have engaged in parallel conduct that affects a class of persons in the same or a similar way. The question is whether a plaintiff who has been affected by the conduct of one of the defendants can name all those who engaged in the challenged conduct as defendants, though that plaintiff had no contact with some of them." (1 Newberg, Class Actions (1977) § 1115g, p. 193.) ■ ■■■ ■ In the absence of a conspiracy between all of the defendants, California has adopted the rule that a class action may only be maintained against defendants as to whom the class representative has a cause of action.[3] Without such a personal cause of action, the prerequisite that the claims of the representative party be typical of the class cannot be met. If the plaintiff class representative only has a personal cause of action against one defendant and never had any claim of any kind against the remaining defendants, his claim is not typical of the class. This prerequisite is also absent when the class representative's cause of action, although similar to those of other members, is only against a defendant as to whom the other class members have no cause of action. The typicality requirement is thus not fulfilled merely because the plaintiffs allege that they suffered injuries similar to those of other parties at the hands of other defendants.

■ ■■ ■ This precept of class actions is well illustrated in both California and federal decisions.[4] For example, in *Payne* v. *United Califor-*

---

[3]Civil conspiracy is not a tort in California; it is merely a theory of joint liability. (*Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 202, fn. 3 [112 Cal.Rptr. 144].) Plaintiffs have presented no evidence to support a finding of conspiracy. They are seeking relief on the basis of alleged unjust enrichment on a theory that the defendants had the use of season ticket purchase money and should be required to account for their profits to the plaintiffs. The record is uncontroverted, however, that the only defendant which had the use of a particular plaintiff's money was the team from whom he or she purchased a season ticket and hence that defendant is the only defendant potentially liable to the particular plaintiff for unjust enrichment.

[4]The California Supreme Court has "suggested that trial courts, in the absence of controlling California authority, utilize the class action procedures of the federal rules." (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113], citations omitted.) Rule 23(a) of the Federal Rules of Civil Procedure (28 U.S.C.) lists the prerequisites to a class action as follows: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The high court has also advised the trial courts to utilize the procedural provisions of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) in the interests of efficiency. (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 820 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) Under that act a class action by a consumer may "be maintained on behalf

*nia Bank* (1972) 23 Cal.App.3d 850 [100 Cal.Rptr. 672], plaintiffs filed a class action against a vacuum cleaner manufacturer alleging that installment contracts of sale had been fraudulently induced. Plaintiffs also named United California Bank, an occasional financier of the contracts, as a defendant. The record showed that the bank had not financed any of the plaintiffs' purchases and for that reason the trial court sustained the bank's demurrer without leave to amend. On appeal, the reviewing court affirmed, holding that plaintiffs were not members of the interested class of persons who had allegedly been defrauded by the bank. Consequently, "[plaintiffs] do not belong to the class whom [they purportedly] represent. [Plaintiffs] cannot give [themselves] standing to sue by purporting to represent a class of which [they are] not a member." (*Id.*, at pp. 859-860, fn. omitted.) Similarly in *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn., supra,* 37 Cal.App.3d 193, the plaintiff was a borrower of one lending institution and she sought to maintain a class action against 38 lending institutions concerning alleged irregularities in the treatment of impound accounts. The Court of Appeal affirmed the dismissal of all lending institutions except the one from whom the plaintiff had borrowed money. The plaintiff, the court concluded, had no standing to maintain a class action against such lenders, and this was not affected by the fact that the lenders belonged to a Savings and Loan League, and had received a model deed of trust together with a report explaining the trust deed. (37 Cal.App.3d at p. 202.) In short, plaintiff "was not a member of the class which she purportedly represented, that is, if each of the [financial institutions] was guilty of wrongdoing, it was not as to [plaintiff] and she therefore could not fairly and adequately represent the interests of the class, . . ." (*Ibid.*) Moreover, "because of the differing policies, practices and loan instruments utilized by the various institutions, the multiple issues would predominate over the common issues and such dissimilarities clearly outweighed the advantages to the judicial process and the litigants of trying in one action the issue with respect to the lenders' action of not paying interest to borrowers on impound accounts." (*Ibid.*) This principle was again applied in *Phillips* v. *Crocker-Citizens Nat. Bank* (1974) 38 Cal.App.3d 901 [113 Cal.Rptr. 688]. There plaintiff, on behalf of himself and all others similarly situated, sued numerous lending institutions in a class action alleging the wrongful collection from borrowers of excessive mortgage insurance premiums. The trial court sustained demurrers of three defendant lending institutions from whom plaintiff had not personally borrowed any funds. Noting that plaintiff did not allege any conspiracy and

---

of all members of the represented class if all of the following conditions exist: [¶] (1) It is impracticable to bring all members of the class before the court. [¶] (2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members. [¶] (3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class. [¶] (4) The representative plaintiffs will fairly and adequately protect the interests of the class." (Civ. Code, § 1781, subd. (b).)

that he pleaded no dealings with or injury suffered at the hands of the demurring institutions, the Court of Appeal affirmed the dismissal of those defendants. "Having stated no personal cause of action against respondents, he cannot represent a class of plaintiffs alleged to have been injured by respondents. Lacking is the well-defined community of interest essential to maintenance of a class action." (*Id.*, at p. 908, citation omitted.) More recently, in *Simons* v. *Horowitz* (1984) 151 Cal.App.3d 834 [199 Cal.Rptr. 134], two artists brought a class action under the California Resale Royalties Act against numerous art dealers, museums and all other similarly situated defendants for commissions on the sale of fine art. The trial court eventually entered judgment against the defendant class and ordered each member of that class to account for and pay commissions to the plaintiff class members. One of the defendant class members appealed and the Court of Appeal reversed the judgment and remanded the case with directions to enter judgment in favor of the class of defendants. The court held: "A plaintiff cannot use the procedure of a class action to establish standing to sue a class or group of defendants unless the plaintiff has actually been injured by *each* of the defendants in the class. Although a plaintiff may represent a group of individuals all of whom have causes of action similar to his own against the same defendant or defendants, he cannot represent a class having causes of action against other defendants as to whom the plaintiff himself has no cause of action." (*Id.*, at p. 845, italics in original and citations omitted.)

This same typicality requirement has also been reiterated in federal decisions. In *La Mar* v. *H & B Novelty & Loan Company* (9th Cir. 1973) 489 F.2d 461, the plaintiff brought a class action against all licensed Oregon pawn brokers for alleged violations of the federal Truth in Lending Act (15 U.S.C. §§ 1601-1677). The plaintiff had done business with only one pawn broker, but he alleged that other members of the public had suffered identical injuries from other pawn brokers. In a case consolidated for appeal with the *La Mar* case the plaintiff alleged that he had suffered an overcharge in violation of federal law in the purchase of an airline ticket from Trans World Airlines and Piedmont Aviation Corp., and he sought to bring a class action against Trans World, Piedmont, and six other air carriers. In both cases the Court of Appeals held that a class action was inappropriate against the defendants with whom the plaintiffs had not done business. The court said: "[I]n our view he cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury." (489 F.2d at p. 462.) Thus the prerequisite that the claims of the representative parties be typical of the class was not met. "In brief, typicality is lacking when the representative plaintiff's cause of action is against a defendant unrelated to the defendants against whom the cause of action of the members of the class lies." (*Id.*, at p. 465.)

The same analysis was used in *Thompson* v. *Board of Educ. of Romeo Com. Schools* (6th Cir. 1983) 709 F.2d 1200. There a number of women school teachers brought a class action against all school districts in Michigan, asserting causes of action for discrimination in the treatment of pregnancy related disability. The defendant school districts set their own policy with regard to maternity leave policies, and different policies were in effect in different districts. The Court of Appeals held that the plaintiffs had no standing to maintain a class action against the school districts by whom they had not been employed, since there was not the requisite identity of interest. (709 F.2d at p. 1205.) The court reversed an order certifying the class action, and directed that the trial court restrict each plaintiff teacher to an action against her own district. (*Id.*, at p. 1206.) The court held that the district court would be allowed to determine whether it would be appropriate to permit each teacher to maintain a class action on behalf of other teachers employed by the same school board. (*Ibid.*)

■ Applying this class action prerequisite to the case at bar, it is clear that the plaintiff representatives did not establish that their claims were typical of the class. Plaintiffs simply alleged that they purchased their tickets from "one or more" of the defendant teams. For all the record shows all of the plaintiffs may have purchased their tickets from the San Francisco Forty-Niners. In the absence of an affirmative showing that the class representatives purchased a season ticket from each of the defendant teams, the typicality requirement has not been met. Plaintiffs had the burden of establishing the prerequisites for a class action (*Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 360 [134 Cal.Rptr. 388, 556 P.2d 750]), and having failed to do so the class was improperly certified.

■ Moreover, even if the class representatives' claims had been typical of all the class members, the fundamental requirement of predominant common questions of law or fact would be lacking. "[T]he ultimate determination of whether the class action is appropriate turns on the existence and extent of common questions of law and fact. . . . [T]he issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) The uncontroverted evidence before the court on the motion for certification of the class action established that the questions of law and fact susceptible to common proof do not predominate. The players' strike was the cause of the cancellation of the games but the strike is not the operative fact in any of the claims against the teams. No claim is made here against the teams because the strike occurred or because the games were cancelled. Instead, the claims are based upon the manner in

which the teams acted to refund the price of the tickets for the cancelled games. The evidence established that each team in the league was responsible for its own policies and for sales of its season tickets, and upon cancellation of the games due to the players' strike each team was responsible for refunding the price to its season ticket holders independent of any other team's liabilities to its season ticket holders. In short, this action is actually 28 separate actions against 28 separate defendants involving 28 separate groups of plaintiffs without any correlation of interests between them. The legal liability of each team will depend upon the manner in which that team acted, its contractual relationship with its ticket holders, and upon the law of the state where the purchase was made. The liability, if any, of each particular team must therefore be factually and legally established independently of the liability of the other 27 teams and vice versa. The only thing in common that plaintiffs possess with these separate groups is a legal theory of unjust enrichment and even the application of that theory turns upon the diverse law of the individual states. As petitioners correctly observe, the trial court would be forced to examine and decide unsettled legal questions under the law of at least 18 different jurisdictions. Included among those questions would be whether season ticket holders have any right to any relief at all. Illustrative of that problem is the case of *Richman* v. *Chicago Bears Football Club* (1984) 127 Ill.App.3d 75 [82 Ill.Dec. 225, 468 N.E.2d 487]. There season ticket holders of the Chicago Bears team brought an action to recover prejudgment interest and interest earned by the team from the time of cancellation of four home games due to the players' strike to the time the purchase price was refunded to them. The trial court granted summary judgment for the team and ticket holders appealed. The Illinois Court of Appeal held that the team had not wrongfully withheld the ticket holders' funds and consequently the fans were not entitled, under Illinois law, to prejudgment interest or any profit the team may have made from the use of their money.

Moreover, even if a cause of action for unjust enrichment existed under the laws of the sister jurisdictions under the facts alleged here, the superior court still would be required to determine under the law of each state the legal effect of the various disclaimers on the tickets, the legal effect of the acceptance of refunds, and the proper interest rate to be applied. When legal questions vary from state to state and hence require the trial court to make diverse legal rulings on an emerging theory of recovery in a multitude of jurisdictions, the questions of law necessarily would be more individual than common to all. (*Rose* v. *Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 157 [166 Cal.Rptr. 16].) Since a community of interest in common questions of law and fact among the claimants to be represented cannot exist in these circumstances, this case, like the *Rose* case, "is singularly ill-suited for prosecution as a class action . . . ." (*Id.,* at p. 157.) The mere fact that

each team belongs to the league, and would have shared its receipts for a particular game with the visiting team, had the game been played, does not change this result. As the court said in a similar context in *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn., supra,* 37 Cal.App.3d at page 202 (fn. omitted): "If such a scintilla of evidence was sufficient to justify the maintenance of a class action, the fundamental requirement of standing would be rendered meaningless."

In an analogous situation, the federal district court in *Coniglio* v. *Highwood Services, Inc.* (W.D.N.Y. 1972) 60 F.R.D. 359, found that a class action was inappropriate. There a season ticket holder of the Buffalo, New York football team attempted to bring a class action on behalf of season ticket holders of 16 of the National Football League teams. The plaintiff alleged that the 16 teams committed antitrust violations by requiring that purchasers of regular season tickets also buy tickets to preseason games. The district court, after reviewing the ticket practices of the teams, concluded that common questions did not predominate. The court said: "While the questions necessary for a determination of the claims of the various classes of plaintiff may be similar, they share little in common. The evidence and theories necessary to establish the allegations of the Buffalo Bills season ticket holders will be separate and distinct from those required of the season ticket holders of other NFL clubs." (*Id.,* at p. 362.) For this and other reasons the court refused to certify the class as broadly as sought by plaintiff and limited the class to season ticket holders of the Buffalo Bills team. The reasoning of that case fully supports our analysis here.

■ There is an additional reason the court abused its discretion in certifying this case as a class action against the 24 out-of-state teams. This is the problem of jurisdiction. The trial court held that the out-of-state defendants' California activities were sufficient to justify the exercise of general jurisdiction over them.[5] We need not consider this ruling, since the doctrine of forum non conveniens compels that the action be dismissed against those teams. In short, in this action the superior court is asked to assume jurisdiction and to adjudicate disputes between non-California claimants against out-of-state defendants over causes of action governed by foreign law and about which California has no interest whatsoever. California has no interest in adjudicating the disparate claims of nonresidents under sister state laws

---

[5]There is no doubt that the defendants' California activities are sufficient to justify the exercise of jurisdiction over a cause of action arising out of those activities. (*Martin* v. *Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472, 475 [108 Cal.Rptr. 23].) It is doubtful, however, that such activities are sufficient to support jurisdiction over a cause of action unrelated to the defendants' California activities. (See *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 149 [127 Cal.Rptr. 352, 545 P.2d 264]; *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, 225 [1 Cal.Rptr. 1, 347 P.2d 1].)

against non-California defendants. Under these circumstances, even if general jurisdiction be assumed, it would be an abuse of discretion for a trial court to do anything other than dismiss the actions. (*Henderson* v. *Superior Court* (1978) 77 Cal.App.3d 583, 597-598 [142 Cal.Rptr. 478]; *Outboard Marine Corp.* v. *Superior Court* (1976) 59 Cal.App.3d 434, 441-442 [130 Cal.Rptr. 642].)

Let a peremptory writ of mandate issue directing the respondent superior court to vacate its order granting the plaintiffs' motion for class certification and to enter a new order denying said motion. The trial court shall sever the claims of the individual plaintiffs to restrict each plaintiff to an action against the team from whom such plaintiff purchased a season ticket and shall dismiss the actions against the out-of-state defendants. Upon proper motion the court may consider whether to permit each plaintiff to maintain a class action on behalf of other season ticket holders of the same California defendant. (See *Thompson* v. *Board of Educ. of Romeo Com. Schools, supra,* 709 F.2d at p. 1206.)

Blease, Acting P. J., and Mering, J.,* concurred.

The petition of real parties in interest for review by the Supreme Court was denied October 2, 1985.

---

*Assigned by the Chairperson of the Judicial Council.