[Civ. No. 52131. First Dist., Div. Three. Feb. 7, 1984.]

MARK SIMONS et al., Plaintiffs and Respondents, v.
BENJAMIN HOROWITZ et al., Defendants and Appellants.

COUNSEL

Slaff, Mosk & Rudman, George Slaff and Marc R. Stein for Defendants and Appellants.

Morgan, Morgan, Towery, Morgan & Spector, W. Robert Morgan and James E. Towery for Plaintiffs and Respondents.

OPINION

SCOTT, J.—In a class action for damages and an injunction under the California Resale Royalties Act, Civil Code section 986 (the Royalties Act), the trial court entered judgment against the defendant class, ordering each defendant class member to account for and pay each member of the plaintiff class commissions due on sales of fine art in California occurring from

January 1, 1977, to the date of the judgment. From this judgment Benjamin Horowitz appeals, both as an individual and on behalf of the defendant class.

I

The Royalties Act provides for the payment of a 5 percent commission or royalty on the resale in California of a work of fine art. This royalty is to be paid to the artist or his agent; but if the seller is unable to locate and pay the artist within 90 days, the royalty is to be given to the Arts Council, to be held in trust for the artist for a seven-year period. If the artist is not located or does not file a claim within that period, his right to the money terminates, and the money is transferred to the Arts Council for its use. Several important exceptions in the act exclude various sales, resales and transfers under certain circumstances; these do not concern us here. (Civ. Code, § 986.)

On February 9, 1978, respondents Mark Simons and Craig Moore filed a complaint for damages and an injunction under Civil Code section 986, claiming to be fine artists within the meaning of the Royalties Act. Simons and Moore also alleged that they were representative of a class of all fine artists who sell their art in California, and that they could fairly represent the interests of that class. The original defendants named in this complaint were Chabot Galleries of Fine Art, Rubicon Gallery of Art, and "Does One to Five Thousand." On March 23, 1978, respondents filed an amended complaint seeking to bring into the action as class defendants under Code of Civil Procedure section 382 "all other persons similarly situated" with the previously named defendants. On March 5, 1979, Upstairs Gallery, Inc., one of the defendants sued and previously served as a Doe, filed an answer to the complaint, "for itself alone."

On June 29, 1979, respondents filed a "notice of motion (for order determining class issues)." This notice, accompanied by a declaration and memorandum of points and authorities, was served on two attorneys and one individual. No opposition pleadings or written response of any kind were filed by any defendant. A hearing was held on this motion on August 2, 1979, at which appeared the attorney for one defendant (Upstairs Gallery) and counsel for the respondents. At this hearing, the trial judge expressed some concerns about the propriety of certifying the alleged defendant class and the importance of determining the form and manner of notice to that class. There was no discussion whatsoever of the precise description or definition of the alleged defendant class; nor was any inquiry made into the question of whether either of the named defendants (neither of whom, apparently, have ever appeared in this action) or any other defendant would be an appropriate representative of the class of defendants.

Nevertheless, on August 20, 1979, the superior court entered an order finding, inter alia, that "there are common issues of fact and law among the plaintiffs' class and the defendants' class; that the plaintiffs and the defendants are each representative of the class"; that "[t]he main plaintiffs and defendants can fairly represent and adequately protect the interests of the class"; and that "[t]he claims and defenses of the representative plaintiffs and defendants respectively are typical of the claims or defenses of the class." The court did not, however, actually define or describe either the plaintiff or the defendant class. Neither did the court indicate who "the main defendants" were, even though the only defendant represented at the August 2 hearing was not one of the named defendants, and had answered the complaint on behalf of itself alone and for no other defendants.

On August 22, 1979, a hearing was held for the purpose of determining the type of notice to be given class members. Only counsel for respondents appeared; there was no appearance by any defendant. A "supplemental order" was issued by the court that same day, setting forth requirements for notice to the plaintiff and defendant classes. Once again, the court failed to define or describe the "classes" it was talking about. In accordance with Government Code section 6064, respondents were to give notice to "the defendant class" by publication in seven enumerated counties: Sacramento, San Francisco, Santa Clara, Los Angeles, San Diego, Monterey, and Santa Barbara. The court also ordered respondents to mail a copy of the notice "to all art galleries and dealers, art dealers wholesale, art museums, and auctioneers as shown in the yellow pages of the telephone books issued to the public in the State of California." This notice was to include an "opt out" provision, apparently for only some members of the defendant class, giving them the opportunity to exclude themselves in writing by December 1, 1979. Finally, the August 22, 1979, order stated that the respondents were required to make "actual service" upon those defendants against whom they sought monetary damages.[1]

---

[1]Appellant has not raised the issue of the legal sufficiency of the lower court's provisions for class notification, arguing only that respondents failed to comply with the terms of the court's order regarding notice. However, the language of the trial court's "supplemental order" causes us serious concern. For example, there is no reason why publication should have been limited to the seven counties enumerated in the judge's opinion. Obviously, many other counties in this state have active artistic communities, art museums, galleries, and art dealers. To provide adequate notice, publication should have been required in all counties of California. We express no view, however, on whether such publication would itself have constituted adequate notice for due process purposes. (*Cooper* v. *American Sav. & Loan Assn.* (1976) 55 Cal.App.3d 274, 281-286 [127 Cal.Rptr. 579].)

More important, the fact that the court nowhere defined the "defendant class" has resulted in substantial ambiguity in its various orders. By specifically enumerating various entities and individuals in its orders, the trial court created confusion as to just what parties were meant to be included in the presumed defendant class. Thus, the court ordered notice to be mailed "to all art galleries and dealers, art dealers wholesale, art museums, and auction-

The record does not contain any copy of a "notice" published and mailed pursuant to the August 22, 1979, order. The only evidence regarding notification of the defendant class consists of two declarations of John Dickey, dated January 29, 1980, and September 9, 1981, entered in the record on appeal by stipulation of the parties and order of this court. The September 9, 1981, declaration states that Mr. Dickey mailed "a copy of Judge Allen's Order to those museums and galleries who are listed in the yellow pages of the seven counties in which publication was ordered." There is no evidence of *when* this "order" was sent; neither is there any evidence that the "order" referred to is the supplemental order of August 22, 1979, rather than one of the several other orders issued by Judge Allen in this matter. The earlier Dickey declaration, dated January 29, 1980, and filed with the superior court on February 5, 1980, states that on January 29, 1980, "2029 copies of the hereto-attached 'Notice to Members of Defendant Class'" were mailed, using addresses "obtained from the yellow page listings, under the headings of 'Art Galleries and Dealers' and 'Museums,' of all California phone directories deposited for public use at the Main City of San Jose Public Library, located at 180 West San Carlos Street." In fact, there is no "Notice to Members of Defendant Class" attached to this declaration, and there is no indication whether this "Notice" is the same as the "order" mentioned in the later September 1981 Dickey declaration. Moreover, there is absolutely no evidence before this court that any of the class defendants were actually served, as had been required by the lower court's supplemental order.

On July 21, 1980, respondents filed an at-issue memorandum and certificate of readiness, showing service on four attorneys and two individual defendants. The next day, an amended at-issue memorandum was filed, omitting the name and address of one of the defense attorneys previously listed. The record does not contain a copy of any notification of the date of trial, or any evidence that such trial notice was provided to any defendants aside from the five listed on the amended at-issue memorandum.

At the proceedings held thereafter on October 10, 1980, only three parties were represented: respondents, and defendants Upstairs Gallery and Cory

---

eers" listed in the telephone yellow pages. Because the trial court never defined any of the terms used in its orders, it is not at all clear whether the term "auctioneers" was meant to be limited to art auctioneers. The Royalties Act, by its terms, applies to *all* "sellers" of fine art. Thus, this notice list clearly does not include all persons covered by the Royalties Act. Moreover, the notice list is *different* from the group that the court states may be excluded upon written request, which consists of "any agent for the seller, any auctioneer, gallery, dealer, broker or museum . . . ." It is unlikely that the court seriously intended that only some class members could "opt out" while others could not, or that only some class members would receive notification by mail, and that these would be a different group from those who might exclude themselves. Nevertheless, the imprecision in the court's orders lends itself to just this kind of confusion.

Galleries. Three witnesses were called: the two named plaintiffs, and their attorney. Neither of the defendants present and represented by counsel offered any defense on behalf of the class whatsoever. The court entered judgment on October 23, 1980, ordering each member of the defendant class, *apart from the two defendants which had appeared on October 10,* to "account for and pay, pursuant to California Civil Code section 986, each artist, or the Arts Council if the artist is not locatable, commissions due on sales of fine art which occurred from January 1, 1977, to date." The court further awarded substantial attorneys' fees and costs to respondents' counsel, to be secured by a lien on payments by the class defendants to artists or the Arts Council. The court also reserved jurisdiction for a period of one year from the date of judgment "to consider the propriety of further relief in the form of an injunction . . . ." In contrast, respondents' claims against Upstairs Gallery and Cory Galleries were settled by stipulation; and pursuant to agreement, both of these defendants were relieved of any liability for attorneys' fees, costs, or any sales of fine art made between January 1, 1977, and the date of the judgment. From this judgment, appellant Horowitz appealed, "as an individual and on behalf of the defendant class."

II

At the threshold, we are confronted with two procedural issues. First, respondents urge that appellant Horowitz has no standing to appeal on his own behalf as an individual. They point out that on March 9, 1981, they filed a voluntary dismissal, ex parte, specifically dismissing Horowitz from the action. This dismissal was filed after Horowitz filed his notice of appeal. Barely two weeks later, respondents moved this court to dismiss the appeal on the grounds that Horowitz had been dismissed from the lawsuit. We denied that motion on May 22, 1981.

There is no merit to this argument. Respondents' purported dismissal of Horowitz was improper, and without force or effect. Rule 23(e) of the Federal Rules of Civil Procedure (28 U.S.C.) provides: "*A class action shall not be dismissed or compromised without the approval of the court,* and *notice* of the proposed dismissal or compromise *shall be given to all members of the class* in such manner as the court directs." (Italics added.) There was no attempt to obtain court approval for this ex parte dismissal, and no notice of it was given to all members of either the plaintiff or the defendant classes. In the absence of California law to the contrary, we look to the federal rule for guidance, and find it controlling in this instance. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 453 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 870-874 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Daar* v.

*Yellow Cab Co.* (1967) 67 Cal.2d 695, 709 [63 Cal.Rptr. 724, 433 P.2d 732].)

The ex parte dismissal of Horowitz in this case would effectively frustrate the defendant class' right to appeal the adverse judgment, although we do not mean to suggest that this was respondents' intention. One of the purposes of rule 23(e) is to discourage the use of the class action device to secure an unjust private settlement, and to protect absent class members from prejudice arising from collusive actions by the parties present in court. (3 Newberg on Class Actions, Termination of Class Actions: Judgments and Voluntary Dismissals, § 4910, pp. 402-403.) In this case, the supposed "representatives" of the defendant class did not file an appeal. Allowance of ex parte dismissals of this nature in a class action context would significantly impinge on the due process rights of class members. We therefore hold that respondents were required to seek court permission for the dismissal of Horowitz, with notice and an opportunity to be heard given to all members of the defendant class. (Cf. *Marcarelli* v. *Cabell* (1976) 58 Cal.App.3d 51, 54-57 [129 Cal.Rptr. 509].)

■ Respondents also argue that because Horowitz did not intervene in the lower court and was never designated a class representative, he has no standing to appear before this court on behalf of the interests of the rest of the alleged defendant class. We do not agree.

The federal courts have upheld the standing of absent individual class members to represent the interests of an entire class on appeal, and to assert "a wrongful denial of the opportunity to participate in the class action." (*Greenfield* v. *Villager Industries, Inc.* (3d Cir. 1973) 483 F.2d 824, 829 [32 A.L.R. Fed. 83]; *Sertic* v. *Cuyahoga, Lake, etc., Carpenters Dist. Coun.* (6th Cir. 1972) 459 F.2d 579, 581-582; *United States* v. *American Soc. of Composers, Auth. & Pub.* (2d Cir. 1971) 442 F.2d 601, 605-606.) Horowitz's principal contention on appeal is that the defendant class was effectively denied the opportunity to participate in this litigation as a result of lack of notice and inadequate representation in the proceedings below. The circumstances of the "representative" defendants' settlement of respondents' claims against them, together with their failure to appeal the adverse judgments against the rest of the defendant class, are convincing evidence of the merit of this contention.

In *Gonzales* v. *Cassidy* (5th Cir. 1973) 474 F.2d 67, 75, the Fifth Circuit Court of Appeals specifically held, under circumstances strikingly similar to those before us, that the principles of res judicata did not bar collateral attack on a class action judgment by an absent individual member of the plaintiff class acting on behalf of that class, where the failure of the repre-

sentative plaintiff to prosecute an appeal of the judgment on behalf of the other members of the class rendered the representation of the class inadequate. The court acknowledged the general rule that a class action judgment is binding on absent members of the class. However, it found that there is an exception to this principle based on the constitutional right to due process. "Due process of law would be violated for the judgment in a class suit to be res judicata to the absent members of a class unless the court applying res judicata can conclude that the class was adequately represented in the first suit." (*Gonzales, supra,* 474 F.2d at p. 74.) Although in the instant case we are faced with an issue of standing on an appeal from a challenged judgment rather than the scope of res judicata in a collateral attack on the judgment, we find the reasoning and holding in *Gonzales* persuasive.

Respondents urge that Horowitz failed to make any appearance prior to filing his notice of appeal, did not obtain "permission" to intervene in the matter, made no motion for a new trial, and was never "designated" as a class representative. Putting aside the very real question of whether Horowitz had *any* notice of this lawsuit prior to judgment, we find that he was not required to undertake any of these procedural steps prior to appeal.

Respondent has not pointed to any rules or decisional authority which would require an absent class member in Horowitz's position to make an appearance prior to filing a notice of appeal. "Absent class members are 'parties' for purposes of being bound by the judgment . . . and having standing to appeal from decisions and object to settlements." (2 Newberg, *supra,* Rights and Obligations of Absent Class Members, § 2830, p. 1260.) Here, the trial court had already purported to certify the defendant class. As a member of that class, Horowitz was an aggrieved party to the action. Under California law, any party aggrieved may appeal an adverse judgment. (Code Civ. Proc., § 902.) Horowitz therefore did not need to obtain "permission" to intervene, and could simply appeal the trial court's judgment by filing a notice of appeal. Neither was he required to be "designated" a class representative prior to appeal. (*Greenfield v. Villager Industries, Inc., supra,* 483 F.2d at p. 829; cf. *Gonzales v. Cassidy, supra,* 474 F.2d at pp. 76-77; *Sertic v. Cuyahoga, Lake, etc., Carpenters Dist. Coun., supra,* 459 F.2d at pp. 581-582; *Patterson v. Stovall* (7th Cir. 1976) 528 F.2d 108, 109, fn. 1; *Newman v. Stein* (2d Cir. 1972) 464 F.2d 689, 691, cert. den. *sub nom. Benson v. Newman* (1972) 409 U.S. 1039 [34 L.Ed.2d 488, 93 S.Ct. 521]; *Ace Heating & Plumbing Company v. Crane Company* (3d Cir. 1971) 453 F.2d 30, 32-33 [30 A.L.R. Fed. 837].)[2]

---

[2]Thus, in *Ace Heating & Plumbing,* the federal appellate court upheld the standing of absent class members who had not opted out of the plaintiff class to attack a settlement on

One of the key contentions in this appeal is the failure of the designated class representatives to provide adequate representation to the class, including the failure to prosecute an appeal. "The purpose of rule 23 would be subverted by requiring a class member who learns of a pending suit involving a class of which he is a part to monitor that litigation to make certain that his interests are being protected; this is not his responsibility—it is the responsibility of the class representative to protect the interests of all class members." (*Gonzales* v. *Cassidy, supra,* 474 F.2d at p. 76.) In the absence of effective representation of the defendant class by the designated representative, only the vigilance of absent class members such as Horowitz can protect those interests. It would simply be inequitable to foreclose Horowitz from representing the interests of the heretofore unrepresented defendant class in appealing the judgment in this case, and we hold that he may do so.

## III

Turning to the merits, we note first that there is a dearth of authority on defendants' class suits, the proper procedures to be followed in such actions, and the limitations thereon. (1 Newberg, *supra,* Prerequisites for Maintaining a Class Action, § 1148, p. 249.) ■ The most familiar kind of representative suit, of course, is the plaintiffs' class action. Actions against a class of defendants are also authorized by Code of Civil Procedure section 382, which provides, in pertinent part: "[W]hen the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

However, there is a substantial difference between a plaintiffs' class suit and a lawsuit against a class of defendants. Defendants' class actions involve the serious danger of fraudulent or calculated selection of defendants who might not fully and fairly represent the interests of the class. Because of this danger, more than a bare compliance with the test is required. ■ "Thus, in theory a class suit is permissible against defendants too numerous to be joined, where there is a common interest and common relief is sought. But a court may refuse to entertain it, or, in a later collateral attack refuse to hold the judgment binding on the absent parties, if it concludes that the persons made defendants did not sufficiently represent the class." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 190, pp. 1862-1863.)

---

grounds, inter alia, of ineffective representation by the class representative. "Ordinarily, aggrieved class members may appeal any final order of a district court in proceedings held pursuant to Rule 23. This general proposition holds true even though such class members have the right to exclude themselves from the class. . . . [¶] . . . We conclude that appellants have standing to appeal in the circumstances here presented." (*Ace Heating & Plumbing Company* v. *Crane Company, supra,* 453 F.2d at pp. 32-33.)

■ A defendant class should be certified and such an action tried only after the most careful scrutiny is given to preserving the safeguards of adequate representation, notice and standing. (*Marchwinski* v. *Oliver Tyrone Corp.* (W.D.Pa. 1979) 81 F.R.D. 487, 489.) Failure to insure any one of these essentials would require reversal of a judgment against a defendant class. In this case, there was an almost total lack of attention given to any of these vital protections.

IV

■ First, respondents were without standing to represent the plaintiff class against the members of the defendant class.

■ ■ ■ Putting aside the serious difficulty we have with the trial court's total failure to provide any clear definition or description of the defendant class in this case, we may assume for purposes of this appeal that the "class" consisted of those persons or entities who were to be mailed notification; i.e., "all art galleries and dealers, art dealers wholesale, art museums, and auctioneers as shown in the yellow pages of the telephone books issued to the public in the State of California."[3] ■ There is no evidence, or indeed any allegation, that the named plaintiffs have any claim against *any* of the unnamed individual members of this presumed defendant class.

A plaintiff cannot use the procedure of a class action to establish standing to sue a class or group of defendants unless the plaintiff has actually been injured by *each* of the defendants in the class. Although a plaintiff may represent a group of individuals all of whom have causes of action similar to his own against the same defendant or defendants, he cannot represent a class having causes of action against other defendants as to whom the plaintiff himself has no cause of action. (*Phillips* v. *Crocker-Citizens Nat. Bank* (1974) 38 Cal.App.3d 901, 906-909 [113 Cal.Rptr. 688]; *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 195-201 [112 Cal.Rptr. 144].)

V

■ Second, it is clear from the record that adequate notice was not given to the defendant class in this case.

---

[3]The absence of an actual definition of the class in any of the court's orders, including that purporting to certify the action as a class action, raises the question of whether there was any ascertainable class in this action. An ascertainable class must be established prior to certification of any class action. (*Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 120 [81 Cal.Rptr. 592, 460 P.2d 464]; *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 704; *Devidian* v. *Automotive Service Dealers Assn.* (1973) 35 Cal.App.3d 978, 985 [111 Cal.Rptr. 228]; 3 Witkin, Cal. Procedure (2 ed. 1971) Pleading, § 181, pp. 1853-1854.)

The court's order of August 22, 1979, although not sufficiently clear in setting forth the precise wording of the notice required, did state that notice should be sent "to *all art galleries and dealers, art dealers wholesale, art museums, and auctioneers* as shown in the yellow pages of the telephone books issued to the public *in the State of California.*" (Italics added.) The September 1981 Dickey declaration states that copies of "Judge Allen's order" (unspecified) were mailed only to "museums and galleries" listed in the yellow pages of "the seven counties in which publication was ordered." On its face, this was not in compliance with the court's August 22, 1979, order, since notice was not sent to *all* of the defendants listed *throughout California.* The earlier Dickey declaration of January 1980 states that notice was addressed to individuals and entities under the headings of "Art Galleries and Dealers" and "Museums" listed in the yellow pages of all California telephone directories deposited for public use at the main branch of the City of San Jose public library. There is no indication that the telephone directories used were actually *all* of the "telephone books issued to the public in the State of California," as required by the terms of the lower court's order. Neither do the categories of addressees listed in this declaration include all the entities in the defendant class, as enumerated in the court's order.

Moreover, the August 22, 1979, order required the respondents "to make *actual service* upon those defendants against whom he [*sic*] seeks monitary [*sic*] damages as compared to injunctive relief." (Italics added.) There is no evidence in the appellate record whatsoever that *any* members of the defendant class were actually served, either with process or class notification.

These defects in service and notification are jurisdictional, and require our reversal of the lower court's judgment against the defendant class. (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 454; *Kass* v. *Young* (1977) 67 Cal.App.3d 100, 104-108 [136 Cal.Rptr. 469].)

VI

Finally, it is patently clear that the members of the defendant class have not been adequately represented at any point during the proceedings in this matter.

The primary criterion for determining whether a class representative has adequately represented a class is whether the representative, through qualified counsel, "vigorously and tenaciously protected the interests of the class." (*Gonzales* v. *Cassidy, supra,* 474 F.2d at p. 75.) In this case, the two defense counsel who attended the dispositive proceedings on October

10, 1980, expressly disclaimed any intention or attempt to represent the defendant class whatsoever. Neither presented any defense at trial; instead they stipulated to a judgment for their own clients that was substantially more favorable to them than to the defendant class as a whole. Moreover, neither filed any appeal on behalf of the absent members of the defendant class.[4]

Adequacy of representation of a class, whether plaintiff or defendant, is a prerequisite for the maintenance of a class action. Because neither the defendants named in the complaint nor the defendants who appeared during the course of this litigation adequately represented the class, the court's judgment as to the defendant class must be reversed. (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at pp. 463-465; *Fallon* v. *Superior Court* (1939) 33 Cal.App.2d 48, 50 [90 P.2d 858]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 190, pp. 1862-1863.)

The judgment against the class of defendants is reversed and the cause remanded with directions to enter judgment in favor of the class of defendants.

White, P. J., and Feinberg, J., concurred.

---

[4]A class representative's failure to prosecute an appeal on behalf of the other members of his class has been found to constitute inadequate representation as a matter of law. (*Gonzales* v. *Cassidy, supra,* 474 F.2d at pp. 75-76.)