[No. B202448. Second Dist., Div. Four. July 29, 2008.]

AUDREY MEDRAZO et al., Plaintiffs and Appellants, v.
HONDA OF NORTH HOLLYWOOD, Defendant and Respondent.

## Counsel

Steven A. Simons; William M. Krieg & Associates, William M. Krieg and Patrick C. McManaman for Plaintiffs and Appellants.

Venable, Aaron H. Jacoby and Richard D. Buckley, Jr., for Defendant and Respondent.

## Opinion

**WILLHITE, J.**—Plaintiff Audrey Medrazo appeals from an order denying class certification in a lawsuit alleging violations of Vehicle Code sections 11712.5 and 24014 (hereafter section 11712.5 and section 24014) by defendant Honda of North Hollywood[1] (hereafter, HNH). We reverse the order and remand the matter with directions to grant certification.

### BACKGROUND

HNH sells new and used motorcycles manufactured by Honda, Suzuki, and Yamaha. In September 2005, Medrazo bought a new Honda motorcycle from

---

[1] The complaint names two defendants: Honda of North Hollywood and Bill Robertson & Sons, Inc. The answer to the complaint was filed by "Bill Robertson & Sons, Inc. dba Honda of North Hollywood." Thus, we refer to a single defendant by the name it used in conducting its business.

HNH. She alleges that at the time she bought it, the motorcycle did not have attached to it a label indicating the manufacturer's suggested retail price and HNH's additional charges. She contends that HNH violated sections 11712.5 and 24014 by failing to attach such a label (which the parties refer to as a "hang tag" or "hanger tag") to the motorcycle.

Section 11712.5 provides in relevant part: "It is unlawful and a violation of this code for a dealer issued a license pursuant to this article to sell, offer for sale, or display any new vehicle as follows: [¶] (a) A new motorcycle unless there is securely attached thereto a statement as required by Section 24014." Section 24014 provides: "(a) No dealer shall sell, offer for sale, or display, any new, assembled motorcycle on its premises, unless there is securely attached to its handlebar a label, approved by the Department of Motor Vehicles, furnished by the manufacturer, on which the manufacturer shall clearly indicate the following: [¶] (1) The recommended retail price of the motorcycle. [¶] (2) The recommended price for each accessory or item of optional equipment physically attached to the motorcycle at the time of its delivery to the dealer. [¶] (b) The dealer shall clearly indicate on the label, furnished by the manufacturer, the following: [¶] (1) The amount charged, if any, over and above the suggested retail price for transportation to the dealership. [¶] (2) The amount charged, if any, for the assembly, preparation, or both, of the motorcycle. [¶] (3) The amount charged, if any, for each dealer added accessory or item of optional equipment. [¶] (4) The total recommended retail price of the vehicle which shall be the aggregate value of paragraphs (1) and (2) of subdivision (a) and paragraphs (1), (2) and (3) of subdivision (b)."

Medrazo filed a class action lawsuit against HNH on behalf of herself and other purchasers of motorcycles alleging, among other things, that HNH's failure to attach hanger tags to the new motorcycles it sells violates the Unfair Business Practices Act (UPA) (Bus. & Prof. Code, § 17200 et seq.) and the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.).[2] She seeks under the UPA injunctive relief and restitution and/or disgorgement of the additional charges HNH imposed without disclosing them on a hanger tag. She also seeks damages under the CLRA.

---

[2] Although Medrazo's complaint is not a model of clarity, it reasonably may be interpreted to allege claims under the UPA and the CLRA based upon HNH's alleged violation of section 11712.5 and section 24014. We note that the complaint alleges several other class claims based upon alleged violations of other statutes, but Medrazo did not seek class certification for any of those other claims.

A little more than a year after she filed the complaint, Medrazo moved to certify the class, which she defined as follows: "All purchasers of new motorcycles who were charged for 'destination', 'assembly' or other DEALER added 'accessories' that were not disclosed on a hanger tag since August 1, 2002, being four years prior to the filing of this lawsuit." She argued that the proposed class is ascertainable (because the class definition is objective and merits neutral) and numerous (it includes thousands of individuals). She also argued that common issues of law and fact predominate over any individual issues because HNH engaged in a single practice that affected all of the class members, that her claim is typical of the other class members' claims, that she can adequately represent the class, and that adjudication on a class basis is superior to individual actions.

She supported her motion with, among other things, (1) her declaration, in which she stated that there was no hanger tag attached to the motorcycle she bought; (2) the sales agreement for her motorcycle showing dealer-added charges of $2,284; (3) HNH's answers to special interrogatories, in which HNH stated that in the four years prior to June 30, 2006, HNH had sold 1,691 Honda, 1,508 Yamaha, and 710 Suzuki motorcycles; and (4) deposition testimony of David Denman, designated by HNH as the person most knowledgeable regarding HNH's procedures and practices regarding attaching hanger tags on new motorcycles.

In his deposition testimony, Denman testified that HNH did not attach hanger tags on any new Suzuki and Yamaha motorcycles because those manufacturers did not provide any hanger tags. With regard to Honda motorcycles, Denman admitted that HNH received hanger tags for all of the motorcycles, but it only put the tags on some of them. He said there were no procedures to determine which motorcycles would have hanger tags attached to them; he explained that if he was caught up on all of his work and noticed a lot porter standing around doing nothing, and if all of the motorcycles were clean, he might direct the porter to attach hanger tags to some of the Honda motorcycles.[3] He could not estimate what percentage of new Honda motorcycles had hanger tags attached to them at any given time.

---

[3] In deposition testimony attached to HNH's opposition to Medrazo's certification motion, Denman testified that when the porters put the hanger tags on the Honda motorcycles, the tags did not include any dealer-added charges. Sometime later, if they were not busy, Denman often would direct someone to find the "standardized freight and prep fees" for each particular motorcycle and write it on the hanger tag for that motorcycle. There was no one who was responsible for identifying hanger tags that did not show the added costs and instructing someone to fill them in.

HNH opposed Medrazo's motion on several grounds. It argued that Medrazo did not have standing to assert claims on behalf of purchasers of Suzuki or Yamaha motorcycles because she bought a Honda. It also contended that her claims were not typical of the claims of those purchasers because, it argued, section 11712.5 is violated only when the manufacturer supplies hanger tags and the dealer fails to attach them, and Suzuki and Yamaha did not supply any hanger tags. Finally, it relied upon HNH's practice of putting hanger tags on some, but not all, of the Honda motorcycles it sold to argue that (1) individual issues predominate because each Honda purchaser would have to show that there was no hanger tag attached to the motorcycle he or she bought; (2) the class is not ascertainable because HNH did not keep records of which Honda motorcycles had hanger tags attached to them; and (3) there is no evidence that there was anyone other than Medrazo who purchased a Honda without a hanger tag attached to it. In reply, Medrazo filed a supplemental declaration stating that when she bought her motorcycle in September 2005, she saw four or more new Honda motorcycles, none of which had a hanger tag or any other label showing the suggested retail price or additional charges.

At the hearing on Medrazo's motion, the trial court began by stating its understanding that a dealer is not required under section 11712.5 and section 24014 to attach hanger tags to motorcycles unless the tags are supplied by the manufacturer, and that Suzuki and Yamaha did not supply hanger tags for its motorcycles. It also noted that all of the dealer-added costs were listed in the sales agreement Medrazo signed, and therefore she had notice of those costs before she entered into the agreement. It then concluded that Medrazo's claims were not typical of the class and she did not have standing to pursue claims of the class because she only bought one motorcycle, a Honda. The court also concluded that individual issues predominate and the class is not ascertainable because there is nothing in HNH's records to indicate which motorcycles had hanger tags attached to them. Therefore, the court denied the certification motion. Medrazo timely filed a notice of appeal from the court's order.

## DISCUSSION

### A. *Rules Governing Class Actions and Standard of Review*

"Courts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system. [Citations.] ' "By

establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress . . . ." ' [Citation.] Generally, a class suit is appropriate 'when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer.' [Citations.] But because group action also has the potential to create injustice, trial courts are required to ' "carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 434–435 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*).)

■ The criteria for class certification are well established. "Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citation.] The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.] [¶] The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' [Citation.] A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On Drug*).)

Trial courts are accorded great discretion in granting or denying certification. "[A] trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]. Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' " (*Linder, supra,* 23 Cal.4th at pp. 435–436.) "As the focus in a certification dispute is on what type of questions—common or individual—

are likely to arise in the action, rather than on the merits of the case [citations], in determining whether there is substantial evidence to support a trial court's certification order, we consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." (*Sav-On Drug, supra,* 34 Cal.4th at p. 327.)

## B. *The Trial Court Erred in Denying Certification*

### 1. *The Court's Adoption of HNH's Defense Against Suzuki and Yamaha Purchasers Was Premature*

The trial court's ruling on the certification issue in this case was influenced by its adoption of HNH's argument that it has an absolute defense with regard to purchasers of Suzuki and Yamaha motorcycles. HNH argues that it cannot be found to have violated section 11712.5 and section 24014 with regard to those motorcycles because Suzuki and Yamaha do not provide hanger tags. HNH relies upon language in section 24014 that indicates that manufacturers are required to furnish tags with certain information on them: "(a) No dealer shall sell, offer for sale, or display, any new, assembled motorcycle on its premises, unless there is securely attached to its handlebar a label, approved by the Department of Motor Vehicles, *furnished by the manufacturer, on which the manufacturer shall clearly indicate the following . . . .*" (Italics added.) Medrazo, on the other hand, relies upon the language in both statutes that prohibits dealers from selling, offering for sale, or displaying new motorcycles without the required tags, to argue that the statute is directed at dealers' conduct and therefore HNH is not excused from complying with the statute by the manufacturers' failure to supply hanger tags.

Medrazo also argues, however, that resolution of this issue is improper on a motion for class certification. She is correct. As the Supreme Court explained in *Linder*, "[w]hen the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards. Were we to condone merit-based challenges as part and parcel of the certification process, similar procedural

protections would be necessary to ensure that an otherwise certifiable class is not unfairly denied the opportunity to proceed on legitimate claims." (*Linder, supra*, 23 Cal.4th at pp. 440–441.) Thus, to the extent the trial court's ruling was based upon its resolution of the merits of HNH's proposed defense, the court abused its discretion.[4]

### 2. *Medrazo's Claims Are Typical of the Class*

Relying upon *Hart v. County of Alameda* (1999) 76 Cal.App.4th 766 [90 Cal.Rptr.2d 386] (*Hart*), HNH argued in opposition to the certification motion that Medrazo's claims were not typical of the class and she did not have standing to pursue claims on behalf of Suzuki and Yamaha purchasers because she purchased a Honda. The trial court agreed. However, *Hart* does not govern here.

In *Hart*, the plaintiff brought a class action against 25 counties, purportedly on behalf of all people who deposited jury fees with the counties and were entitled to a refund of those deposits. The plaintiff alleged that he, or his assignors, had deposited jury fees in four of the 25 counties. The appellate court held that the plaintiff did not have standing to assert claims against the counties in which he or his assignors did not deposit jury fees, and therefore his claim was not typical of the class he purported to represent. As the court explained, "when a class action is brought against multiple defendants, the 'action may only be maintained against defendants as to whom the class representative has a cause of action. Without such a personal cause of action, the prerequisite that the claims of the representative party be typical of the class cannot be met. If the plaintiff class representative only has a personal cause of action against one defendant and never had any claim of any kind against the remaining defendants, his claim is not typical of the class. . . . Th[is] . . . requirement is . . . not fulfilled merely because the plaintiffs allege that they suffered injuries similar to those of other parties at the hands of other defendants.' [Citations.]" (*Hart, supra*, 76 Cal.App.4th at pp. 775–776; see also *Simons v. Horowitz* (1984) 151 Cal.App.3d 834, 845 [199 Cal.Rptr. 134] ["A plaintiff cannot use the procedure of a class action to establish standing to sue a class or group of defendants unless the plaintiff has actually been injured by each of the defendants in the class." (Italics omitted.)].)

---

[4] We express no opinion as to whether the trial court correctly interpreted the language of section 24014. We also note that the trial court commented at the hearing on the certification motion that Medrazo had notice of the dealer-added costs before she signed the sales agreement. To the extent that comment was an implied ruling that HNH had an additional defense to her claims (although HNH did not make that argument in opposition to the certification motion), that ruling also was an improper ruling on the merits.

In the present case, Medrazo alleges claims against a *single defendant*.[5] She alleges she was subjected to the same alleged wrong, by the same defendant, as the other members of the putative class: she purchased a motorcycle that did not have a hanger tag disclosing the dealer-added costs. Thus, she has standing to bring her claims on behalf of the class. (See *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1090 [56 Cal.Rptr.3d 861, 155 P.3d 268].) That HNH may raise a defense against certain class members that would not apply to Medrazo does not defeat her standing, nor does it make her claims not typical of the class. The typicality requirement is meant to ensure that the class representative is able to adequately represent the class and focus on common issues. (*Id.* at p. 1091.) It is only when a defense unique to the class representative will be a major focus of the litigation (*id.* at p. 1090), or when the class representative's " 'interests are antagonistic to or in conflict with the objectives of those [s]he purports to represent' " (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23]) that denial of class certification is appropriate. But even then, the court should determine if it would be feasible to divide the class into subclasses to eliminate the conflict and allow the class action to be maintained. (*Id.* at pp. 470–471.)

If it becomes necessary in this case, the class can be divided into two subclasses, one consisting of Honda purchasers and the other consisting of Suzuki and Yamaha purchasers. If the court at that time determines that Medrazo cannot adequately represent both subclasses—a determination that must be based upon her ability to adequately address HNH's separate defense with regard to the Suzuki and Yamaha purchasers, rather than whether she is subject to that defense—it should afford her the opportunity to add additional class representatives to represent the Suzuki and Yamaha purchasers. (See *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 137 [50 Cal.Rptr.3d 135].)

### 3. *Common Issues Predominate*

Although it is not entirely clear, it appears that the trial court found that common issues do not predominate because there are factual issues regarding whether the manufacturer of a given motorcycle provided a hanger tag and whether the hanger tag was attached to the motorcycle at the time of purchase. Such an analysis is flawed, however, because it does not consider the number and substance of the issues that are common to the class.

"Predominance is a comparative concept, and 'the necessity for class members to individually establish eligibility and damages does not mean

---

[5] See footnote 1, *ante.*

individual fact questions predominate.' [Citations.] Individual issues do not render class certification inappropriate so long as such issues may effectively be managed. [Citations.] [¶] Nor is it a bar to certification that individual class members may ultimately need to itemize their damages." (*Sav-On Drug, supra*, 34 Cal.4th at p. 334.)

It is true that in this case, each Honda purchaser will be required to establish that there was no hanger tag attached to the motorcycle he or she purchased and/or that the dealer-added costs were not disclosed on the hanger tag,[6] and all purchasers will be required to establish the suggested retail price of their motorcycles and the amount of dealer-added costs included in their purchases (if it is determined that the class is entitled to a monetary recovery measured by those items). But those individual issues must be compared to the issues that are subject to classwide (or subclasswide) treatment. Those issues include (1) whether HNH violated section 11712.5 and section 24014 by selling motorcycles without hanger tags; (2) whether a purchaser who buys a motorcycle sold in violation of section 11712.5 and section 24014 is entitled to restitution, disgorgement, and/or damages, and if so, what is the proper measure of restitution, disgorgement, and/or damages; (3) whether the alleged injury to the purchaser is mitigated by the disclosure of dealer-added costs in a sales agreement; and (4) whether HNH is excused from the requirements of section 11712.5 and section 24014 if the manufacturer does not supply a hanger tag that complies with section 24014.

There is nothing in the record to suggest that the individual issues cannot be effectively managed. Indeed, the record suggests that the resolution of the individual issues will involve mostly undisputed evidence—presumably, the class members will attest that there were no hanger tags on the motorcycles they purchased, and HNH has admitted it did not attach hanger tags on any Suzuki or Yamaha motorcycles, did not attach them to some of the Honda motorcycles, and has no evidence to show there were hanger tags on any specific motorcycles. That HNH may be hampered in its ability to challenge the class members' evidence due to its failure to keep records of its casual approach to affixing hanger tags is not a valid reason to deny class certification on the ground that individual issues predominate. In short, the substance and scope of the individual issues pale in comparison to the substance and scope of the common issues.

### 4. *The Class Is Ascertainable*

The trial court also relied upon HNH's failure to keep records of which Honda motorcycles did or did not have hanger tags to conclude that the class

---

[6] In light of Denman's deposition testimony, it appears that no such issue is present with regard to Suzuki and Yamaha purchasers, since none of those motorcycles had hanger tags.

is not ascertainable. The court agreed with HNH's argument that Medrazo must be able to identify each individual class member through objective records to satisfy the ascertainability requirement, and it found that Medrazo could not do so. The court erred.

■ "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." (*Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 828 [97 Cal.Rptr.2d 226].) While often it is said that "[c]lass members are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official records" (*Rose v. City of Hayward* (1981) 126 Cal.App.3d 926, 932 [179 Cal.Rptr. 287]; accord, *Aguiar v. Cintas Corp. No. 2, supra*, 144 Cal.App.4th at p. 135), that statement must be considered in light of the purpose of the ascertainability requirement.

"Ascertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 914 [107 Cal.Rptr.2d 761]; accord, *Aguiar v. Cintas Corp. No. 2, supra*, 144 Cal.App.4th at p. 135.) The representative plaintiff need not identify the individual members of the class at the class certification stage in order for the class members to be bound by the judgment. (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 706 [63 Cal.Rptr. 724, 433 P.2d 732].) As long as the potential class members may be identified without unreasonable expense or time and given notice of the litigation, and the proposed class definition offers an objective means of identifying those persons who will be bound by the results of the litigation, the ascertainability requirement is met.

In the present case, the potential class members may easily be identified by reference to HNH's sales records. Given Denman's admission that none of the Suzuki or Yamaha motorcycles it sold had hanger tags at all, and only some of the Honda motorcycles had hanger tags (and only some of those had all of the required information on them), it appears that the vast majority of HNH's customers are members of the class. Thus, notice may be given to all of HNH's customers who bought motorcycles during the relevant period. Because the proposed class definition is sufficient to allow those purchasers of Hondas without hanger tags to identify themselves as members of the class, they will be bound by results of the litigation. Medrazo's inability to identify the individual class members at this time is irrelevant to class certification.

## DISPOSITION

The order denying certification is reversed. On remand, the trial court is directed to certify the class. Medrazo shall recover her costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 19, 2008, S167170.