Filed 5/13/21  Shi v. Wolfsdorf Rosenthal CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

|  |  |
|---|---|
| ZHAO HUI SHI et al., | B303465 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC662775) |
| v. | |
| WOLFSDORF ROSENTHAL, LLP, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard J. Burdge, Jr., Judge.  Affirmed.

Law Offices of Steven P. Scandura and Steven P. Scandura; Howard Posner, for Plaintiffs and Appellants.

Haight Brown & Bonesteel, Valerie Ann Moore, Jennifer K. Saunders, for Defendant and Respondent.

_____

Named plaintiffs and appellants, Zhao Hui Shi and her husband Jun Lu (Plaintiffs), appeal the judgment of dismissal of their suit for legal malpractice against defendant and respondent Wolfsdorf Rosenthal, LLP (Wolfsdorf), following the trial court's order sustaining Wolfsdorf's demurrer to the third amended complaint (TAC) without leave to amend. Plaintiffs sought to bring a class action against Wolfsdorf for its alleged role in a conspiracy to defraud foreign investors in connection with an investment visa program under the United States government's EB-5 investment visa program. Neither named plaintiff was represented by Wolfsdorf; however Shi, who was represented by attorney Rachel H. Lew, alleges to have been harmed in an identical manner to Wolfsdorf's clients who invested in the scheme, such that there is sufficient commonality for her to fairly represent those investors.[1]

On appeal, Plaintiffs argue that (1) the class action should proceed against Wolfsdorf with Shi as a named plaintiff although she lacks standing, because she is suitable to fairly represent the class of all plaintiffs; (2) the claims of the class were sufficiently common to make class certification appropriate; and (3) if dismissal is appropriate,

---

[1] Plaintiff Lu did not invest in the visa program directly. He lent money to Shi to participate in the program. Plaintiffs do not argue that Lu is a suitable representative of the Wolfsdorf subclass.

2

the trial court was required to give notice to the subclass of plaintiffs who were Wolfsdorf's clients.

We affirm the judgment.

## FACTS AND PROCEEDINGS[2]

### *First Amended Complaint*

Plaintiffs filed the first amended complaint (FAC)[3] on December 19, 2017, which alleged as follows:  Plaintiffs wished to invest in the EB-5 Immigrant Investor Program administered by U.S. Citizenship and Immigration Services (USCIS), which promotes economic growth in the United States by granting visas to foreign investors.  Immigrants who have invested or are in the process of investing $500,000 in a targeted employment area in a new commercial enterprise that will benefit the U.S. economy and create at least 10 full-time positions for qualifying employees may be eligible for conditional permanent residency status under the program.  The commercial enterprise must either be, or be affiliated with, an entity

---

[2] The facts and proceedings through our affirmance of the trial court's order granting in part Wolfsdorf's anti-SLAPP motion are taken from our prior unpublished opinion in *Shi v. Wolfsdorf Rosenthal, LLP* (Oct. 29, 2019, B290792 [nonpub. opn.] (*Shi*)).

[3] The complaint is not contained in the record.

3

designated as a "regional center" to administer EB-5 investment projects by the USCIS.

Charles C. Liu founded Pacific Proton Therapy Center, LLC (Pacific Proton), which would purportedly develop Beverly Proton Center, LLC (Beverly Proton), a proton therapy cancer treatment center in Southern California. Beverly Proton would be funded by eligible EB-5 immigrant investors. Liu also formed the Pacific Proton EB-5 Fund, LLC (EB-5 Fund), into which foreign investors would make EB-5 eligible investments. On June 28, 2012, the USCIS approved Liu's Form I-924, the form application to designate Pacific Proton as an EB-5 regional center.

Between October 2014 and April 2016, class members each invested $500,000 in limited liability company funds in the EB-5 Fund. The total investment from all investors was at least $26,967,918. Each investor was provided a May 2013 Private Offering Memorandum (POM) drafted by Miller Mayer, LLP (Miller Mayer), which set forth the terms of the investment and emphasized the crucial roles of both Liu and Dr. John Thropay, a radiation oncologist, to the project. Liu and his wife, Lisa Wang, conspired with Dr. Thropay to create the appearance that Beverly Proton was a legitimate project. They never intended to build the cancer center, but instead used it as a pretext to defraud Plaintiffs of their investments. Liu and Wang were aided and abetted in their fraudulent venture by several attorneys who prosecuted I-526 visa petitions for the investors, including Wolfsdorf.

4

Wolfsdorf was retained by approximately 35 of the investors who were referred to Wolfsdorf by "the perpetrators of the fraud."  Wolfsdorf either knew of the scheme to defraud potential immigrants or should have known but for its willful ignorance, or negligently and recklessly ignored the high probability that its clients' money would be stolen.  Wolfsdorf failed to conduct any due diligence and limited its duties to its clients to exclude any responsibility to investigate the legitimacy of the underlying transaction.  The documents Wolfsdorf drafted did not contain safeguards to protect the investors.  Wolfsdorf did not communicate to its clients that the enterprise lacked basic capital controls and that no mechanisms were in place to protect their money.

Little, if any, work was performed on the project.  In 2015, invested funds were used to demolish a building Dr. Thropay owned, which inured solely to his benefit.  Liu and Wang diverted almost $21.1 million from the EB-5 Fund for personal use and to pay overseas marketers.  By June 3, 2016, only $234,899.19 of the original $26.9 million contributed by foreign investors remained, despite this total lack of progress.

 Plaintiffs alleged causes of action in fraud, legal malpractice, negligent misrepresentation, and entitlement to treble damages and attorney fees for violation of Penal Code section 496, subdivision (c) against Wolfsdorf and several other defendants, including Lew, the attorney who prosecuted Shi's I-526 visa petition with the USCIS, and

David Gerald Derrico, an attorney who purportedly prosecuted I-526 visa petitions for other investors.

Plaintiffs claimed that Wolfsdorf, Lew, and Derrico (the attorney defendants) conspired in the fraud. Plaintiffs were referred to the attorney defendants specifically because the attorneys had experience with the Beverly Proton project and could vouch for its viability and legitimacy. The attorney defendants knew that these representations would be conveyed through their representation, but did not express any doubts to Plaintiffs. Plaintiffs relied on these representations and the attorney defendants' credibility when deciding to invest. The attorney defendants failed to place protections in the relevant documents, did not conduct rudimentary investigations on Plaintiffs' behalf, did not advise Plaintiffs of potential concerns, and purposefully limited their own liability. As a direct and proximate result of these actions, Plaintiffs each lost over $500,000. The attorney defendants acted with a conscious disregard for Plaintiffs' rights, entitling Plaintiffs to punitive damages.

### Special Motion to Strike

Wolfsdorf moved to strike all four causes of action under Code of Civil Procedure section 425.16. The trial court granted the motion as to all but the legal malpractice cause of action.[4] On appeal, we affirmed the trial court's judgment,

---

[4] "A special motion to strike under section 425.16—the so-called anti-SLAPP statute—allows a defendant to seek

6

concluding that the prosecution of I-526 visa petitions with the USCIS was protected petitioning activity, and that Plaintiffs failed to demonstrate that there was even minimal merit to their causes of action for fraud, negligent misrepresentation, and violating Penal Code section 496. (*Shi*, *supra*, B290792, at *7-*8, *19-*22.)

### *Second Amended Complaint and Demurrer*

Plaintiffs filed the second amended complaint (SAC) on May 25, 2018, asserting a legal malpractice claim against Wolfsdorf and the other attorney defendants identical to the claim in the FAC in the essentials.

Wolfsdorf demurred to the SAC. The trial court sustained the demurrer with leave to amend. The court found that Shi and Lu lacked standing to pursue a legal malpractice claim against Wolfsdorf, because Wolfsdorf did not represent Shi or Lu and did not owe either of them a legal duty. Plaintiffs' argument that all class members suffered the same loss in the same manner was not sufficient to establish that the named plaintiffs had standing as to Wolfsdorf.

---

early dismissal of a lawsuit that qualifies as a SLAPP. 'SLAPP is an acronym for "strategic lawsuit against public participation."' (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)" (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1035.)

The court then addressed Plaintiffs' arguments regarding their ability to establish class treatment for their claims. The court found that Plaintiffs' claims against Wolfsdorf involved factual questions that could only be resolved by individual proof. The SAC thus failed to plead sufficient facts to establish a community of interests.

The court ordered Wolfsdorf to submit to pre-certification discovery as to the identity and contact information of its clients who were involved in the EB-5 project and any payments received by Wolfsdorf and sources thereof.

### Discovery

Plaintiffs propounded pre-certification special interrogatories on Wolfsdorf on September 5, 2018. Wolfsdorf timely filed its response and objections on October 5, 2018. Plaintiffs failed to file a motion to compel further responses until May 21, 2019, well past the 45-day deadline to do so under Code of Civil Procedure section 2030.300, subdivision (c). The trial court denied the motion to compel as untimely, noting that compliance with the statute was mandatory and the court could not entertain a belated motion to compel.

***Third Amended Complaint and Demurrer***

Plaintiffs filed the Third Amended Complaint (TAC) on July 15, 2019, alleging the same legal malpractice claim against Wolfsdorf. In an attempt to remedy the standing issue, the TAC divided the class into subclasses of plaintiffs according to which attorney had represented the subclass. Plaintiffs did not claim to have been represented by Wolfsdorf personally, but argued that any insufficiency in standing was due to Wolfsdorf's refusal to comply with discovery.

On August 16, 2019, Wolfsdorf filed the instant demurrer on the grounds that Plaintiffs lacked standing to sue and did not materially amend the TAC sufficiently to state a legal malpractice cause of action against Wolfsdorf. The trial court sustained the demurrer and dismissed the TAC without leave to amend. The court ruled that Plaintiffs lacked standing to sue individually because they had not actually been injured by Wolfsdorf. Because they lacked individual standing, they could not represent the class; a class action is a procedural mechanism that may not be used to achieve standing, and in an action against multiple defendants the named plaintiffs must have standing to sue each of the defendants. The court noted that although Plaintiffs claimed that their failure to allege new facts to establish that Wolfsdorf owed them a duty of care was due to Wolfsdorf's refusal to comply with discovery, the discovery related to Wolfsdorf's clients who were investors in the EB-5

9

project and would not aid the named plaintiffs in establishing standing.  The designation of subclassifications did not cure the standing issue.  Plaintiffs' addition of new language to emphasize that the representation was identical for each subclass did not set forth any new facts.  The trial court further ruled that Plaintiffs' claims against Wolfsdorf were not appropriate for class treatment because they involved factual questions that could only be resolved by individual proof.  The fact that all investors received the same POM was, by itself, insufficient to establish commonality.

Plaintiffs timely appealed.

## DISCUSSION

### *Standard of Review*

""""On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.  [Citations.]'  [Citation.]  We may also consider matters that have been judicially noticed.  [Citations.]"  [Citation.]  "'[W]hen the allegations of the complaint contradict or are inconsistent with such facts, we accept the latter and reject the former.  [Citations.]'  [Citation.]  We give the same precedence to facts evident from exhibits attached to the pleading.'"  [Citation.]

10

"'If a demurrer is sustained, we exercise our independent judgment on whether a cause of action has been stated as a matter of law, regardless of reasons stated by the trial court. [Citation.] We affirm if the trial court's decision was correct on any theory. [Citation.]' [Citation.]

"It is beyond dispute that trial courts are permitted to decide the issue of class certification on demurrer. (*Tucker* [*v. Pacific Bell Mobile Services* (2012)] 208 Cal.App.4th [201] 212 [(*Tucker*)]; see *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 440 [noting the issue is 'settled' that courts are authorized to 'weed[ ] out' legally meritless class action suits prior to certification by demurrer or pretrial motion].) A trial court may sustain a demurrer to class action allegations where "'it concludes as a matter of law that, assuming the truth of the *factual* allegations in the complaint, there is no reasonable possibility that the requirements for class certification will be satisfied.'" (*Tucker*, at p. 211, italics added; see *Canon U.S.A., Inc. v. Superior Court* (1998) 68 Cal.App.4th 1, 5 [(*Canon*)] [noting that when the 'invalidity of the class allegations is revealed on the face of the complaint, and/or by matters subject to judicial notice, the class issue may be properly disposed of by demurrer or motion to strike,' and noting that '[i]n such circumstances, there is no need to incur the expense of an evidentiary hearing or class-related discovery'].)

"When a demurrer is sustained without leave to amend, as in the instant case, "'we decide whether there is a reasonable possibility that the defect can be cured by

amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." [Citation.] Leave to amend should not be granted where amendment would be futile. [Citation.]' (*Tucker*, *supra*, 208 Cal.App.4th at p. 211.)" (*Schermer v. Tatum* (2016) 245 Cal.App.4th 912, 922–923 (*Schermer*).)

### *Standing of Named Plaintiffs to Represent the Wolfsdorf Subclass*

Plaintiffs concede that Shi does not have an individual claim against Wolfsdorf, but argue that Shi's lack of standing does not preclude her from representing the subclass of plaintiffs in the legal malpractice claim against Wolfsdorf, because Shi can fairly represent the subclass's interests. Plaintiffs aver that the trial court applied the wrong standard when it determined that Shi could not represent the class because she lacked standing, rather than assessing her suitability to continue to represent the class. Plaintiffs view the issue as "a question of practicality, not jurisdiction."

We reject Plaintiffs' argument, which attempts to paint an exception as the rule. Standing is very much relevant to the inquiry whether a particular plaintiff can fairly represent a class, and in most instances lack of standing will prevent a named plaintiff from such representation. As we

will discuss, Shi does not fall under the exception to the general requirement that a class representative has standing, as addressed in the cases upon which Plaintiffs rely.

"'In general, a named plaintiff must have standing to prosecute an action [Citation.] . . . "As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication because he or she has either suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator. [Citations.]  To have standing, a party must be beneficially interested in the controversy; that is, he or she must have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.'  [Citation.]  The party must be able to demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical. . . ."  [Citation.]  "Without standing, there is no actual or justiciable controversy, and courts will not entertain such cases.  [Citation.]"  [Citation.]'  [Citation.]

"Related is the problem of 'mootness.'  When a plaintiff has received all that he or she has demanded in the complaint, the case is considered 'moot'; in other words, there is no further relief the court could provide.  "'Generally, courts decide only 'actual controversies' which

13

will result in a judgment that offers relief to the parties. [Citations.]'" [Citation.]" (*Schoshinski v. City of Los Angeles* (2017) 9 Cal.App.5th 780, 791 (*Schoshinski*).)

"'"'[M]ootness has been described as "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" [Citations.]'" [Citations.]' [Citations.]" (*Schoshinski*, *supra*, 9 Cal.App.5th at p. 791.)

"Because a class action suit involves potential relief to absent class members in addition to the plaintiff who brings the suit, courts have recognized the duty a named plaintiff owes to the class, and the 'flexible character' of mootness in such actions. [Citations.] Thus, even when the named plaintiff's claims are moot, courts have under some circumstances applied exceptions to the mootness doctrine to allow the plaintiff to continue prosecuting the suit." (*Schoshinski*, *supra*, 9 Cal.App.5th at pp. 791–792.)

Here, Plaintiffs rely on two cases that address circumstances under which it may be appropriate for the named plaintiff to continue to represent a class despite the fact that his or her claims have been mooted: *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 (*La Sala*), superceded by statute as stated in *Warrington 611 Associates v. Aetna Life Ins. Co.* (D.N.J. 1989) 705 F.Supp. 229, 233, and *Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582 (*Kagan*), disapproved of on another issue by *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 643, fn.

14

3.  Both *La Sala* and *Kagan* are readily distinguishable from the case at bar, and we discuss them in turn. In *La Sala*, the named plaintiffs brought suit against the defendant lender challenging the validity of a clause contained in deeds of trust that the lender used, which accelerated the loan if the borrower executed a junior encumbrance on the secured property.  (*La Sala*, *supra*, 5 Cal.3d at p. 868.)  After the named plaintiffs sued on behalf of themselves and others similarly situated, and before a hearing on the lender's demurrer, the lender agreed to waive the "due on encumbrance" clause as to the named plaintiffs, but did not provide this benefit to the entire class.  (*Id*. at pp. 868-870.)  The trial court ruled that there was no remaining plaintiff to represent the class, and dismissed the action without prejudice without notifying the class members of the dismissal. (*Id*. at p. 870.)

The Supreme Court in *La Sala* held that "whenever the dismissal of a class action stems from a defendant's grant of benefits to the representative plaintiffs, which are not provided to the class as a whole, the court may not dismiss the action without notice to the class." (*Id*. at p. 868.)  Moreover, the lender's waiver of the acceleration clause as to the named plaintiffs did not render them per se unfit to represent the class. (*Id*. at p. 871.)  Instead, the trial court had discretion to determine their suitability. (*Id*. at pp. 871-872.)  Finally, the Supreme Court held that even if the trial court found named plaintiffs were no longer suitable to represent the class "it should at least afford

15

plaintiffs the opportunity to amend their complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative." (*Id.* at p. 872.) "If, after the court has thus extended an opportunity to amend, the class still lacks a suitable representative, the court may conclude that it must dismiss the action." (*Ibid.*)

The Supreme Court explained the rationale for its approach to mootness under the particular circumstances in *La Sala* as follows: "If defendant is permitted to succeed with such revolving door tactics, only members of the class who can afford to initiate or join litigation will obtain redress; relief for even a portion of the class would compel innumerable appearances by individual plaintiffs. Yet the function of the class action is to avoid the imposition of such burdens upon the class and upon the court. [Citation.] If we sanction [defendant's] tactic defendants can always defeat a class action by the kind of special treatment accorded plaintiffs here and thus deprive other members of the class of the benefits of the litigation and any notice of opportunity to enter into it." (*Id.* at p. 873.)

*Kagan* addressed a similar situation in a class action brought pursuant to the Consumer's Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.). In *Kagan,* the named plaintiff opened an individual retirement account with the defendant financial institution, which represented it would not charge management fees. (*Kagan, supra,* 35 Cal.3d at p. 587.) After the plaintiff opened the account, the defendant notified her that it would charge her a fee for administering

16

the account.  (*Ibid*.)  The plaintiff tried unsuccessfully to protest the fee, and ultimately retained counsel, who advised the defendant that it had violated the CLRA, demanded that it cease its misleading advertising, and demanded that it reimburse and/or refrain from deducting the fees from the accounts of the plaintiff and similarly-situated persons.  (*Id*. at pp. 588-589.)  The defendant complied with some of the demands but made no attempt to identify and reimburse customers who had already been charged the fee.  (*Id*. at p. 589.)  The plaintiff brought a class action.  (*Ibid*.)  The defendant moved for a determination that the action lacked merit under Civil Code section 1781, subdivision (c)(3). (*Ibid*.)  The defendant argued that the plaintiff had not suffered damages, because the fee had never been deducted from her account, and therefore she was not a member of the class she claimed to represent.  (*Ibid*.)  The trial court granted the motion, and the plaintiff appealed.  (*Ibid*.)

The Supreme Court in *Kagan* construed the plaintiff's demand letter as having been made on behalf of the class. (*Kagan*, *supra*, 35 Cal.3d at pp. 590-592.)  To defeat a class action lawsuit under Civil Code section 1782, subdivision (c), the defendant was required to adequately notify the class members and provide an opportunity for remedy of defective goods or services.  (*Id*. at p.591.)  Because the defendant had not complied with Civil Code section 1782, subdivision (c), the remedy the defendant offered the plaintiff was not adequate to preclude a class action.  (*Id*. at p. 592.)

17

The Supreme Court rejected the defendant's argument in *Kagan* that allowing the plaintiff to bring a class action was contrary to the well-established rule that a class representative must be a member of the class that she purports to represent because the argument "ignores the clear legislative intent that prospective defendants under the [CLRA] not avert a class action by exempting or 'picking off' prospective plaintiffs one-by-one through the provision of individual remedies." (*Kagan*, *supra*, 35 Cal.3d at p. 593.) The *Kagan* court noted that the result was consistent with its opinion in *La Sala*, decided before the effective date of the CLRA. (*Id.* at p. 594.)

Here, Plaintiffs maintain that these cases establish the rule that if a named plaintiff had standing when the litigation was initiated, the court must evaluate whether the named plaintiff may still be suitable to represent the class in the event that standing is lost. They argue that Shi had standing to sue Wolfsdorf at the outset of this litigation by virtue of Plaintiffs' fraud-based claims, which were grounded on the theory that Wolfsdorf conspired with the other defendants to defraud the class. As noted above, this court previously affirmed dismissal of those claims because they were based on protected petitioning activity (i.e., Wolfsdorf's prosecution of I-526 visa applications with the government on behalf of its clients), and those claims did not have even minimal merit.

Plaintiffs' reading of *La Sala* and *Kagan* is overly broad. *La Sala* and *Kagan* articulate the "pick off" exception

18

to standing, which applies where a defendant unilaterally attempts to resolve a class representative's claims in order to "pick off" the representative and thwart the class action against it. (See *Schoshinski*, *supra*, 9 Cal.App.5th at pp. 791-792 [discussing *La Sala*, *Kagan*, and the "pick off" exception].) Shi never had standing to maintain a legal malpractice action against Wolfsdorf independent of Plaintiffs' fraud claim. She could not have met the requirements to establish a legal malpractice claim at any time in the lawsuit, as Wolfsdorf did not represent her and owed her no duty of care. Unlike the named plaintiffs in *La Sala* and *Kagan*, whose claims were mooted by the defendants' actions to evade the possibility of liability to the entire class, Wolfsdorf did not "pick off" Shi by providing satisfaction to Shi for a malpractice against it, thereby leaving other members of the purported class unrepresented. The circumstances here are in no way comparable to the circumstances underlying the exception at issue in *La Sala* and *Kagan*.[5]

In the absence of an exception, Plaintiffs are left with the rule: Shi cannot represent a class in an action against a defendant against whom she has no individual claim. (See *Baltimore Football Club, Inc. v. Superior Court* (1985) 171 Cal.App.3d 352, 359 (*Baltimore Football Club*) ["In the

---

[5] We also note that *Kagan*, although consistent with the spirit of *La Sala*, hinged on the Supreme Court's interpretation of a CLRA provision, which has no application in this case.

19

absence of a conspiracy between all of the defendants, California has adopted the rule that a class action may only be maintained against defendants as to whom the class representative has a cause of action"]; see also *Simons v. Horowitz* (1984) 151 Cal.App.3d 834, 845 ["[a] plaintiff cannot use the procedure of a class action to establish standing to sue a class or group of defendants unless the plaintiff has actually been injured by *each* of the defendants in the class"].)

### *Appropriateness of Class Certification*

As a preliminary matter, Plaintiffs argue that the trial court abused its discretion by deciding the issue of commonality at this stage in proceedings. Plaintiffs assert that they were "precluded from conducting any meaningful discovery" before the demurrer was sustained because Wolfsdorf brought the Anti-SLAPP motion and the trial court denied their motion to compel further responses. Plaintiffs specifically complain that "[t]he identities and contact information for the Wolfsdorf subclass plaintiffs are still being kept secret by Wolfsdorf." In fact, the record demonstrates that Plaintiffs were precluded from completing precertification discovery by their failure to timely file their motion to compel further responses.

Regardless, we conclude that it was appropriate for the trial court to decide commonality at this stage of proceedings because "'it is clear that there is no reasonable possibility

20

that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact. [Citations.]' [Citations.]" (*Tucker*, *supra*, 208 Cal.App.4th at p. 212.) Although "'[t]he preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation' [Citation.] . . . if the defects in the class action allegations appear on the face of the complaint or by matters subject to judicial notice, the putative class action may be defeated by a demurrer . . . . [Citation.]" (*In re BCBG Overtime Cases* (2008) 163 Cal.App.4th 1293, 1298–1299; see also *Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1041–1042.) "In such circumstances, there is no need to incur the expense of an evidentiary hearing or class-related discovery." (*Canon*, *supra*, 68 Cal.App.4th at p. 5.)

"Section 382 of the Code of Civil Procedure authorizes a class action when 'the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.' '[W]e have articulated clear requirements for the certification of a class' under this statute. [Citation.] 'The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives.' [Citation.] 'The community of

21

interest requirement involves three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.'" [Citation.] Regarding the first of these factors, we have recognized "'[a]s a general rule'" that "'if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. '" [Citations.] Relatedly, 'In certifying a class action, the court must also conclude that litigation of individual issues, including those arising from affirmative defenses, can be managed fairly and efficiently.' [Citation.] Finally, other considerations relevant to certification 'include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing.' [Citation.]" (*Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 968–969.)

Plaintiffs contend there is sufficient commonality between class members' claims that class certification is appropriate. They assert that all putative class members have nearly identical claims—they lost the same amount of money in the same way at the hands of a group of defendants who all played the same role in the scam. Plaintiffs allege that the attorney defendants accepted blocks of clients and processed the same forms, which were

22

prepared by Miller Mayer.  None of the attorney defendants did sufficient investigation or ensured a meaningful escrow for the funds.  Plaintiffs urge that the fraudulent POM drafted by Miller Mayer and the fraudulent escrow alone are sufficient to establish commonality.  We disagree.

Here, there is "'no reasonable possibility that [Plaintiffs] could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact. [Citations.]' [Citations.]" (*Tucker*, *supra*, 208 Cal.App.4th at p. 212.)

First, "[i]f the plaintiff class representative only has a personal cause of action against one defendant and never had any claim of any kind against the remaining defendants, his claim is not typical of the class.  This prerequisite is also absent when the class representative's cause of action, although similar to those of other members, is only against a defendant as to whom the other class members have no cause of action.  The typicality requirement is thus not fulfilled merely because the plaintiffs allege that they suffered injuries similar to those of other parties at the hands of other defendants." (*Baltimore Football Club*, *supra*, 171 Cal.App.3d at p. 359; see also *Phillips v. Cocker–Citizens National Bank* (1974) 38 Cal.App.3d 901, 906–908 (*Phillips*).)  Plaintiffs concede that the members of each subclass were represented by a different attorney.  As none of the investors were represented by all three attorneys,

23

there is not a plaintiff who has claims that are typical of the class.  It is irrelevant that their injuries are the same.

Second, "a plaintiff who is unable to secure standing for himself is not in a position to fairly insure the adequate representation of those alleged to be similarly situated . . . . if each of the respondents was guilty of wrongdoing, it was not as to appellant and she therefore could not fairly and adequately represent the interests of the class . . . ." (*Phillips*, *supra*, 38 Cal.App.3d at p. 908.)  None of the investors were represented by more than one attorney, so there is no one who could fairly and adequately represent the class.

Third, "class actions will not be permitted, for example, where there are diverse factual issues to be resolved, even though there may be many common questions of law." (*Brown v. Regents of University of California* (1984) 151 Cal.App.3d 982, 988–989.)  As the trial court reasoned, the legal malpractice claims would involve factual questions that could only be resolved by individual proof.  The claims would require an individualized inquiry into the representations each law firm made to each investor, the scope of the work undertaken on behalf of a given client, and the degree to which each investor relied upon those representations. Plaintiffs' focus on the alleged fraudulent nature of the offering memorandum is beside the point; with respect to the clients of Wolfsdorf, the commonality must be shown as to the alleged legal malpractice in prosecuting their

24

immigration petitions.  Plaintiffs fail to show such commonality.

### *Notice to the Wolfsdorf Subclass*

Plaintiffs contend that if Shi cannot continue to represent the subclass, the trial court erred in dismissing the action against Wolfsdorf without also giving notice to Wolfsdorf's clients.  Here, again, Plaintiffs attempt to extrapolate the Supreme Court's circumstance-specific ruling in *La Sala* to a much broader category of cases, which would encompass their own.  They assert that *La Sala*'s mandate of notice to the class applies in all instances where a purported class representative is prevented from representing the class.  However, *La Sala's* mandate is more limited:  the *La Sala* court held that "whenever the dismissal of a class action *stems from a defendant's grant of benefits to the representative plaintiffs, which are not provided to the class as a whole,* the court may not dismiss the action without notice to the class . . . ." (*La Sala*, *supra*, 5 Cal.3d at p. 868, italics added.)  The notice requirement based on a selective grant of benefits to class representatives does not apply in this case.

More generally, notice of a dismissal to class members is governed by Rules of Court, rule 3.770(c), which provides: "If the court has certified the class, and notice of the pendency of the action has been provided to class members, notice of the dismissal must be given to the class in the

manner specified by the court.  If the court has not ruled on class certification, or if notice of the pendency of the action has not been provided to class members in a case in which such notice was required, notice of the proposed dismissal may be given in the manner and to those class members specified by the court, or the action may be dismissed without notice to the class members if the court finds that the dismissal will not prejudice them."  In this case, the trial court impliedly found that the dismissal would not prejudice the subclass members.  (See *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1287–1288 [findings necessary to support the trial court's order may be implied if supported by substantial evidence].)  Given the lack of commonality on issues involving alleged malpractice, Plaintiffs' failure to pursue pre-certification discovery and provide information about Wolfsdorf's alleged malpractice, we cannot say the trial court abused its discretion in dismissing the action without notifying a purported sub-class.

Finally, the trial court did not abuse its discretion by sustaining the demurrer without leave to amend.  Plaintiffs were given multiple opportunities to amend their complaint, cannot cure the defect in their own standing because of the lack of relationship with Wolfsdorf, and have proposed no other amendments that would cure the defects in their case.  (See *Schermer*, *supra*, 245 Cal.App.4th at p. 923.)

26

## DISPOSITION

The judgment is affirmed.  Respondent Wolfsdorf Rosenthal, LLP is awarded its costs on appeal.


MOOR, J.

WE CONCUR:



RUBIN, P. J.



KIM, J.